**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **BEVERLY PESTELLO** | § | |
| **Plaintiff** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO.**  5:15-cv-707 |
| | § | |
| **LIBERTY INSURANCE CORPORATION** | § | |
| **Defendant** | § | |

---

## INDEX OF MATTERS BEING FILED

---

Liberty Insurance Corporation's Notice of Removal

Exhibit A:   Copies of all process, pleadings, orders and the docket sheet on file in the state court lawsuit

Exhibit B:   A list of counsel of record.

Exhibit C:   Policy

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **BEVERLY PESTELLO** | § | |
| **Plaintiff** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO.** |
| | § | |
| **LIBERTY INSURANCE CORPORATION** | § | |
| **Defendant** | § | |

## LIBERTY INSURANCE CORPORATION'S NOTICE OF REMOVAL

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Defendant Liberty Insurance Corporation (incorrectly named as Liberty Mutual Insurance Company) files this Notice of Removal pursuant to 28 U.S.C. §1446(a). In support thereof, Liberty Insurance Corporation (Liberty) would respectfully show the following:

### *Procedural Background*

1.     On June 30, 2015, Plaintiff Beverly Pestello ("Plaintiff") filed her Original Petition ("Original Petition") styled Cause No. 2015-CI-10707; *Beverly Pestello v. Liberty Mutual Insurance Company,* in the 438th Judicial District Court, Bexar County, Texas. Liberty was served with citation on July 22, 2015 and filed its original answer on August 7, 2015.

### *Nature of the Suit*

2.     This lawsuit involves a dispute over Liberty's handling of Plaintiff's insurance claims for damages from a wind/hail storm allegedly sustained by her residential property: 13224 Circle North Drive E, Helotes, Texas 78023. Plaintiff asserts causes of action against Liberty for breach the insurance contract, breach of the duty of good faith and fair dealing, and violations of the Texas Insurance Code.

*Basis for Removal*

3.     Removal is proper under 28 U.S.C. §1332 because there is complete diversity of citizenship between the proper parties to the suit and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4.     There is complete diversity of citizenship between the parties.  At the time Plaintiff filed her Original Petition in District Court on June 30, 2015 and as of the date of filing this Notice, Liberty is and was a company organized under the laws of the State of Illinois with its principal place of business at 175 Berkeley Street, Boston, Massachusetts.  Accordingly, at the time Plaintiff initially filed this suit, and through the filing of this Notice, Defendant Liberty is not a citizen of the State of Texas for diversity jurisdiction purposes.

5.     Upon information and belief, Plaintiff was a citizen of Texas when her Petition was filed, and continues to be a citizen of Texas.

6.     Further, this Court has diversity jurisdiction over this matter because the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  In determining the amount in controversy, the court may consider "policy limits and potential attorney's fees, ... penalties, statutory damages, and punitive damages."[1]  Here, Plaintiff claims that a wind/hail storm caused damages to her property that Plaintiff insured through Liberty.[2]  Plaintiff seeks damages for

---

[1]  *St. Paul Reinsurance Co., Ltd v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998); *see Ray v. State Farm Lloyds*, 1999 WL 151667 (N.D. Tex. Mar. 10, 1999) at *2-3 (finding a sufficient amount in controversy in Plaintiffs' case against their insurance company for breach of contract, fraud, negligence, gross negligence, bad faith, violations of the Texas Insurance Code, violations of the Texas Deceptive Trade Practices Act, and mental anguish); *Fairmont Travel, Inc. v. George S. May Int'l Co., et. al.*, 75 F. Supp. 2d 666, 668 (S.D. Tex. 1999) (considering DTPA claims and the potential for recovery of punitive damages for the amount in controversy determination); *Chittick v. Farmers Insurance Exchange*, 844 F. Supp. 1153, 1155 (S.D. Tex. 1994) (finding a sufficient amount in controversy after considering the nature of the claims, the types of damages sought and the presumed net worth of the defendant in a claim brought by the insureds against their insurance company for actual and punitive damages arising from a claim they made for roof damages).
[2]  *See* Exhibit A-1, Original Petition at pages 2-3.

Liberty's refusal to fully compensate Plaintiff under the terms of her insurance contract.[3]   The Policy at issue is a Libertyguard Deluxe Homeowner's Policy with coverage limits of $411,300.00 for the dwelling, $242,780.00 for the contents, $82,260.00 for the loss of use of the property.[4]

7.      In addition, Plaintiff seeks statutory penalties and treble damages under the Texas Insurance Code.[5]  Plaintiff also seeks attorney fees for bringing this suit.[6]  Thus, given the Policy involved in Plaintiff's claim, the nature of Plaintiff's claim, and the types of damages sought, it is more likely than not that the amount in controversy exceeds the federal jurisdictional minimum of $75,000.00.

8.      In addition, as required by Texas Rule of Civil Procedure 47(b), Plaintiff specifically alleges that she seeks monetary relief "the maximum of which is over $200,000 but not more than $1,000,000."[7]

8.      Based on the Policy's coverage limits, it would be legally possible for Plaintiff to obtain a recovery of at least $75,000.

### *The Removal is Procedurally Correct*

9.      Liberty was first served with the Original Petition in District Court on July 22, 2015.  Therefore, Liberty filed this Notice of Removal within the 30-day time period required by 28 U.S.C. §1446(b).

---

[3] *See Id.* at page 2-5.  Plaintiffs' Policy was issued by Liberty Insurance Corporation rather than the named Defendant.   Regardless of the proper insurance carrier defendant, removal is proper because Liberty Mutual Insurance Company ("Liberty Mutual") is likewise a diverse party.  Liberty Mutual is a company organized under the laws of the State of Illinois with its principal place of business at 175 Berkeley Street, Boston, Massachusetts.
[4] *See* Exhibit C, Policy 002.
[5] *See* Exhibit A-1, Original Petition, page 6.
[6] *Id.* at page 8.
[7] *Id.* at page 10.

10.     Venue is proper in this district under 28 U.S.C. §1446(a) because this district and division embrace the place in which the removed action has been pending and because a substantial part of the events giving rise to Plaintiff's claims allegedly occurred in this district.

11.     Pursuant to 28 U.S.C. §1446(a), all pleadings, process, orders, and all other filings in the state court action are attached to this Notice as Exhibit A.

12.     Pursuant to 28 U.S.C. §1446(d), promptly after Liberty files this Notice, written notice of the filing of this Notice of Removal will be given to Plaintiff, the adverse party.

13.     Pursuant to 28 U.S.C. §1446(d), a true and correct copy of this Notice will be filed with the District Clerk for 438th Judicial District for Bexar County, Texas, promptly after Liberty files this Notice.

WHEREFORE, Liberty Insurance Corporation (incorrectly named as Liberty Mutual Insurance Company) requests that this action be removed from the 438th District Court of Bexar County, Texas to the United States District Court for the Western District of Texas, San Antonio Division, and that this Court enter such further orders as may be necessary and appropriate.

Respectfully submitted:

David R. Stephens
Attorney in Charge
State Bar No. 19146100
LINDOW STEPHENS TREAT LLP
One Riverwalk Place
700 N St. Mary's Street, Suite 1700
Telephone: (210) 227-2200
Facsimile: (210) 227-4602
dstephens@lstlaw.com

and

4

Of Counsel:

Carrie D. Holloway
State Bar No. 24028270
LINDOW STEPHENS TREAT LLP
One Riverwalk Place
700 N St. Mary's Street, Suite 1700
San Antonio, Texas 78205
Telephone: (210) 227-2200
Facsimile: (210) 227-4602
cholloway@lstlaw.com

*Counsel for Defendant*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Notice of Removal was filed electronically with the United States District Court for the Western District of Texas, San Antonio Division, with notice of case activity to be generated and sent electronically by the Clerk of the Court with ECF notice being sent and a copy mailed *via certified mail* on this **19th** day of **August 2015**, addressed to those who do not receive notice from the Clerk of the Court.

Robert A. Pollom
Mahsa Tajipour
KETTERMAN ROWLAND & WESTLUND
16500 San Pedro, Suite 302
San Antonio, Texas 78232

David R. Stephens /Carrie D. Holloway

# Exhibit A



# Bexar County

## District Clerk/County Clerk Search

### Full Case Information

---

## Case Summary

### Case Information for Cause #: 2015CI10707

**BEVERLY PESTELLO vs LIBERTY MUTUAL INSURANCE COMPANY**

| | | | |
|---|---|---|---|
| **Cause No. :** | 2015CI10707 | **Name :** | BEVERLY PESTELLO |
| **Business Name :** | | **Litigant Type :** | PLAINTIFF |
| **Date Filed :** | 06/30/2015 | **Docket Type :** | DEBT/CONTRACT |
| **Case Status :** | PENDING | **Court :** | 438 |

*Information as of: 08/17/2015 11:26:48 AM*

---

## Case History

*Currently viewing 1 through 5 of 5 records.*

| Type/Sequence | Date Filed | Description |
|---|---|---|
| P00001 | 6/30/2015 | PETITION |
| P00002 | 6/30/2015 | JURY DEMAND JURY FEE PAID |
| P00003 | 6/30/2015 | SERVICE ASSIGNED TO CLERK 1 |
| S00001 | 7/2/2015 | CITATION<br>LIBERTY MUTUAL INSURANCE COMPANY<br>ISSUED: 7/2/2015 RECEIVED: 7/15/2015<br>EXECUTED: 7/22/2015 RETURNED: 7/29/2015 |
| P00004 | 8/7/2015 | ORIGINAL ANSWER OF<br>LIBERTY INSURANCE CORPORATION INCORRECTL<br>Y NAMED AS LIBERTY MUTUAL INSURANCE COMP<br>ANY |



**CORPORATION SERVICE COMPANY**

**S0M / ALL**
**Transmittal Number: 14045926**
**Date Processed: 07/23/2015**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Bruce Buttaro<br>Liberty Mutual Insurance Company<br>175 Berkeley Street<br>Boston, MA 02117 |

| | |
|---|---|
| **Entity:** | Liberty Mutual Insurance Company<br>Entity ID Number  1765547 |
| **Entity Served:** | Liberty Mutual Insurance Company |
| **Title of Action:** | Beverly Pestello vs. Liberty Mutual Insurance Company |
| **Document(s) Type:** | Citation/Petition |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Bexar County District Court, Texas |
| **Case/Reference No:** | 2015CI10707 |
| **Jurisdiction Served:** | Texas |
| **Date Served on CSC:** | 07/22/2015 |
| **Answer or Appearance Due:** | 10:00 am Monday next following the expiration of 20 days after service |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| Sender Information: | Robert A. Pollom<br>210-490-7402 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882  |  sop@cscinfo.com

PRIVATE PROCESS                    Case Number: 2015-CI-10707

2015CI10707 S00001

BEVERLY PESTELLO
**VS.**
**LIBERTY MUTUAL INSURANCE COMPANY**
(Note:Attached Document May Contain Additional Litigants.)

IN THE DISTRICT COURT
438th JUDICIAL DISTRICT
BEXAR COUNTY, TEXAS

## CITATION

"THE STATE OF TEXAS"

Directed To: LIBERTY MUTUAL INSURANCE COMPANY

BY SERVING ITS REGISTERED AGENT, CORPORATION SERVICE COMPANY

"You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you." Said petition was filed on the 30th day of June, 2015.

ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS 2ND DAY OF JULY A.D., 2015.

PETITION

ROBERT A POLLOM
ATTORNEY FOR PLAINTIFF
16500 SAN PEDRO AVE 302
SAN ANTONIO, TX 78232-2241



**Donna Kay M<sup>c</sup>Kinney**
**Bexar County District Clerk**
**101 W. Nueva, Suite 217**
**San Antonio, Texas 78205**

By: *Xavier Duran,* Deputy

---

**OFFICER'S RETURN**

I received this citation on _____ at _____o'clock ___M. and:( ) **executed** it by delivering a copy of the citation with the date of delivery endorsed on it to the defendant,_____ in person on the _____ at _____o'clock ___M. at:_____ or ( ) **not executed** because _____ Fees:_____ Badge/PPS #:_____ Date certification expires:_____

_____County, Texas

By:_____
OR:   VERIFICATION OF RETURN (If not served by a peace officer) SWORN TO this _____.

_____
NOTARY PUBLIC, STATE OF TEXAS

OR: My name is_____, my date of birth is_____, and my address is _____, _____(County).
I declare under penalty of perjury that the foregoing is true and correct. Executed in _____County, State of Texas, on the _____ day of_____, 20_____.

_____
Declarant       ORIGINAL (DK002)

FILED
6/30/2015 4:15:15 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Marc Garcia

CIT PPS W/JD - SAC1

CAUSE NO. **2015CI10707**

| | | |
|---|---|---|
| BEVERLY PESTELLO | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| V. | § | **438TH** JUDICIAL DISTRICT |
| | § | |
| | § | |
| LIBERTY MUTUAL INSURANCE | § | |
| COMPANY | § | BEXAR COUNTY, TEXAS |

### PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff BEVERLY PESTELLO, files this Original Petition against LIBERTY MUTUAL INSURANCE COMPANY ("LIBERTY MUTUAL" or the "INSURANCE DEFENDANT"), and in support thereof, would show as follows:

### I.
### DISCOVERY CONTROL PLAN LEVEL

Plaintiff intends for discovery to be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure. This case involves complex issues and will require extensive discovery. Therefore, Plaintiff will ask the Court to order that discovery be conducted in accordance with a discovery control plan tailored to the particular circumstances of this suit.

### II.
### PARTIES AND SERVICE

Plaintiff resides in Bexar County, Texas.

Defendant LIBERTY MUTUAL is in the business of insurance in the State of Texas. The insurance business done by INSURANCE DEFENDANT in Texas includes, but is not limited to, the following:

1

- The making and issuing of contracts of insurance with the Plaintiff;

- The taking or receiving of application for insurance, including the Plaintiff's application for insurance;

- The receiving or collection of premiums, commissions, membership fees, assessments, dues or other consideration for any insurance or any part thereof, including any such consideration or payments from the Plaintiff; and

- The issuance or delivery of contracts of insurance to residents of this state or a person authorized to do business in this state, including the Plaintiff.

This defendant may be served with personal process, by its registered agent, Corporation Service Company at 211 East 7th Street, Suite 620, Austin, Texas 78701, or wherever else it may be found.

### III.
### JURISDICTION AND VENUE

Venue is appropriate in Bexar County, Texas because all or part of the conduct giving rise to the causes of action were committed in Bexar County, Texas and the Plaintiff and property which is the subject of this suit are located in Bexar County, Texas.

Accordingly, venue is proper pursuant to Texas Civil Practice & Remedies Code §15.002.

### IV.
### FACTS

Plaintiff is the owner of a Texas Homeowner's Insurance Policy (hereinafter referred to as "the Policy"), which was issued by INSURANCE DEFENDANT.

Plaintiff owns the insured property, which is specifically located at 13224 Circle North Drive, Helotes, Texas 78023 (hereinafter referred to as "the Property").

INSURANCE DEFENDANT sold the Policy insuring the Property to Plaintiff.

During the terms of said Policy, Plaintiff sustained covered losses in the form of

2

wind and/or hail damage and damages resulting therefrom, and Plaintiff timely reported same pursuant to the terms of the Policy. Plaintiff asked that INSURANCE DEFENDANT cover the cost of repairs to the Property pursuant to the Policy. INSURANCE DEFENDANT failed to conduct a full, fair and adequate investigation of Plaintiff's covered damages.

As detailed in the paragraphs below, INSURANCE DEFENDANT wrongfully denied Plaintiff's claim for repairs to the Property, even though the Policy provided coverage for losses such as those suffered by Plaintiff. Furthermore, INSURANCE DEFENDANT failed to pay Plaintiff's claim by not providing full coverage for the damages sustained by Plaintiff.

To date, INSURANCE DEFENDANT continues to delay in the payment for the damages to the Property.

INSURANCE DEFENDANT failed to perform its contractual duty to adequately compensate Plaintiff under the terms of their Policy. Specifically, INSURANCE DEFENDANT refused to pay the full proceeds of the Policy after conducting an outcome-oriented investigation, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged property, and all conditions precedent to recovery under the Policy have been carried out and accomplished by Plaintiff. INSURANCE DEFENDANT'S conduct constitutes a breach of the insurance contract between it and Plaintiff.

Pleading further, INSURANCE DEFENDANT misrepresented to Plaintiff that the damage to the Property was not covered under the Policy, even though the damage was caused by a covered occurrence. INSURANCE DEFENDANT'S conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(1).

INSURANCE DEFENDANT failed to make an attempt to settle Plaintiff's claim in a fair manner, although it was aware of its liability to Plaintiff under the Policy. Its conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(2)(A).

INSURANCE DEFENDANT failed to explain to Plaintiff any valid reason for its coverage denial and offer of an inadequate settlement. Specifically, it failed to offer Plaintiff full compensation, without any valid explanation why full payment was not being made. Furthermore, INSURANCE DEFENDANT did not communicate that any future settlements or payments would be forthcoming to pay for the entire loss covered under the Policy, nor did it provide any explanation for the failure to adequately settle Plaintiff's claim. INSURANCE DEFENDANT conduct is a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(3).

INSURANCE DEFENDANT failed to meet its obligations under the Texas Insurance Code regarding timely acknowledging Plaintiff's claim, beginning an investigation of Plaintiff's claim, and requesting all information reasonably necessary to investigate Plaintiff's claim within the statutorily mandated time of receiving notice of Plaintiff's claim. Its conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.055.

Further, INSURANCE DEFENDANT failed to accept or deny Plaintiff's full and entire claim within the statutorily mandated time of receiving all necessary information. Its conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.056.

4

INSURANCE DEFENDANT failed to meet its obligations under the Texas Insurance Code regarding payment of claims without delay. Specifically, it has delayed full payment of Plaintiff's claim and, to date, Plaintiff has not received full payment for the claim. Its conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.058.

From and after the time Plaintiff's claim was presented to INSURANCE DEFENDANT, its liability to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, it has refused to pay Plaintiff in full, despite there being no basis whatsoever upon which a reasonable insurance company would have relied to deny the full payment. INSURANCE DEFENDANT'S conduct constitutes a breach of the common law duty of good faith and fair dealing.

Additionally, INSURANCE DEFENDANT knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed all or part of material information from Plaintiff.

Because of INSURANCE DEFENDANT'S wrongful acts and omissions, Plaintiff was forced to retain the professional services of the attorney and law firm who is representing Plaintiff with respect to these causes of action.

**V.**
**CAUSES OF ACTION AGAINST INSURANCE DEFENDANT**

**A.      BREACH OF CONTRACT**

INSURANCE DEFENDANT'S conduct constitutes a breach of the insurance contract between it and Plaintiff. Defendant's failure and/or refusal, as described above, to pay Plaintiff adequate compensation as it is obligated to do under the terms of the Policy in question, and under the laws of the State of Texas, constitutes a breach of the insurance

5

contract with Plaintiff.

**B.      NONCOMPLIANCE WITH TEXAS INSURANCE CODE:**

**1.      UNFAIR SETTLEMENT PRACTICES**

INSURANCE DEFENDANT'S conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices: TX. INS. CODE §541.060(a). All violations under this article are made actionable by TEX. INS. CODE §541.151.

INSURANCE DEFENDANT'S unfair settlement practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(1).

INSURANCE DEFENDANT'S unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though its liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(2)(A).

INSURANCE DEFENDANT'S unfair settlement practice, as described above, of refusing to pay Plaintiff's claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(7).

**2.      THE PROMPT PAYMENT OF CLAIMS**

INSURANCE DEFENDANT'S conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims. All violations made under this article are made actionable by TEX. INS. CODE §542.060.

6

INSURANCE DEFENDANT'S failure to acknowledge receipt of Plaintiff's claim, commence investigation of the claim, and request from Plaintiff all items, statements, and forms that it reasonably believed would be required within the applicable time constraints, as described above, constitutes a non-prompt payment of claims and a violation of TEX. INS. CODE §542.055.

INSURANCE DEFENDANT'S failure to notify Plaintiff in writing of its acceptance or rejection of the claim within the applicable time constraints constitutes a non-prompt payment of the claim. TEX. INS. CODE §542.056.

INSURANCE DEFENDANT'S delay of the payment of Plaintiff's claim following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for, as described above, constitutes a non-prompt payment of the claim. TEX. INS. CODE §542.058.

## C.     BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

INSURANCE DEFENDANT'S conduct constitutes a breach of the common law duty of good faith and fair dealing owed to insureds pursuant to insurance contracts.

INSURANCE DEFENDANT'S failure, as described above, to adequately and reasonably investigate and evaluate Plaintiff's claim, although, at that time, it knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

## VI.
## KNOWLEDGE

Each of the acts described above, together and singularly, was done "knowingly" by INSURANCE DEFENDANT as that term is used in the Texas Insurance Code, and was a producing cause of Plaintiff's damages described herein.

7

## VII.

## DAMAGES

Plaintiff would show that all of the aforementioned acts, taken together or singularly, constitute the proximate and producing causes of the damages sustained by Plaintiff.

As previously mentioned, the damages caused by the covered losses have not been properly addressed or repaired in the months since the loss occurred, causing further damage to the Property, and causing undue hardship and burden to Plaintiff. These damages are a direct result of INSURANCE DEFENDANT'S mishandling of Plaintiff's claim in violation of the laws set forth above.

For breach of contract, Plaintiff is entitled to regain the benefit of the bargain, which is the amount of the claim, together with attorney's fees.

For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the policy, court costs, and attorney's fees. For knowing conduct of the acts described above, Plaintiff asks for three times the actual damages. TEX. INS. CODE §541.152.

For noncompliance with the Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of Plaintiff's claim, as well as eighteen (18) percent interest per annum on the amount of such claim as damages, together with attorney's fees. TEX. INS. CODE §542.060.

For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, losses due to nonpayment of the amount the insurer owed, and

exemplary damages.

For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the attorney whose name is subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorney in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

## VIII.

In addition, as to any exclusion, condition, or defense pled by INSURANCE DEFENDANT, Plaintiff would show that:

The clear and unambiguous language of the policy provides coverage for damage caused by losses made the basis of Plaintiff's claim, including the cost of access to fix the damages;

In the alternative, any other construction of the language of the policy is void as against public policy;

Any other construction and its use by the INSURANCE DEFENDANT violates the Texas Insurance Code section 541 et. seq. and is void as against public policy;

Any other construction is otherwise void as against public policy, illegal, and violates state law and administrative rule and regulation.

In the alternative, should the Court find any ambiguity in the policy, the rules of construction of such policies mandate the construction and interpretation urged by Plaintiff;

In the alternative, INSURANCE DEFENDANT is judicially, administratively, or equitably estopped from denying Plaintiff's construction of the policy coverage at issue;

In the alternative, to the extent that the wording of such policy does not reflect the true intent of all parties thereto, Plaintiff pleads the doctrine of mutual mistake requiring information.

## IX.
## REQUEST FOR DISCLOSURES

Pursuant to the Texas Rules of Civil Procedure 194, Plaintiff requests that INSURANCE DEFENDANT provide the information required in a Request for Disclosure.

## X.

As required by Rule 47(b), Texas Rules of Civil Procedure, Plaintiff's counsel states that the damages sought are in an amount within the jurisdictional limits of this Court. As required by Rule 47(c), Texas Rules of Civil Procedure, Plaintiff's counsel states that Plaintiff seeks monetary relief, the maximum of which is over $200,000 but not more than $1,000,000. The amount of monetary relief actually awarded, however, will ultimately be determined by a jury. Plaintiff also seeks pre-judgment and post-judgment interest at the highest legal rate.

## XI.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that INSURANCE DEFENDANT be cited to appear and answer herein; that, on final hearing, Plaintiff have judgment against INSURANCE DEFENDANT for an amount, deemed to be just and fair by the jury, which will be a sum within the jurisdictional limits of this Court; for costs of suit; for interest on the judgment; for pre-judgment interest; and, for such other and further relief, in law or in equity, either general or special, including the non-monetary relief of declaratory judgment against the INSURANCE DEFENDANT, to which Plaintiff may be justly entitled.

Respectfully submitted,

KETTERMAN ROWLAND & WESTLUND
16500 San Pedro, Suite 302
San Antonio, Texas 78232
Telephone:     (210) 490-7402
Facsimile:     (210) 490-8372


BY:   _/s/ Robert A. Pollom_
            Robert A. Pollom
            State Bar No. 24041703
            robert@krwlawyers.com
            Mahsa Tajipour
            State Bar No. 24050163
            mahsa@krwlawyers.com


ATTORNEYS FOR PLAINTIFF

**PLAINTIFF REQUESTS A TRIAL BY JURY**



U.S. POSTAGE
PAID
CONVERSE,TX
78109
JUL 20,15
AMOUNT
$7.67
00103285-12

1000    78701

CERTIFIED MAIL

7015 0640 0000 3748 4937

BRAVO'S LEGAL PROCESSING
6631 FM 78, SUITE 110-479
SAN ANTONIO, TX 78244

Liberty Mutual Insurance Company
Registered Agent, Corporation
Service Company
211 East 7th Street Suite 620
Austin, Texas 78701







FILED
8/7/2015 2:00:44 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Debra Garay

Case 5:15-cv-00707-OLG   Document 1   Filed 08/19/15   Page 23 of 81

## CAUSE NO. 2015-CI-10707

| | | |
|---|---|---|
| BEVERLY PESTELLO | § | IN THE DISTRICT COURT |
|     Plaintiff | § | |
| | § | |
| vs. | § | 438TH JUDICIAL DISTRICT |
| | § | |
| LIBERTY MUTUAL INSURANCE | § | |
| COMPANY | § | |
|     Defendant | § | BEXAR COUNTY, TEXAS |

---

## DEFENDANT LIBERTY INSURANCE CORPORATION'S (INCORRECTLY NAMED AS LIBERTY MUTUAL INSURANCE COMPANY) ORIGINAL ANSWER

---

NOW COMES Defendant Liberty Insurance Corporation (Incorrectly Named as Liberty Mutual Insurance Company) and files its Original Answer, and would respectfully show as follows:

### I.

Defendant generally denies each and every allegation contained in Plaintiff's Original Petition pursuant to Texas Rule of Civil Procedure 92, and demands strict proof thereof by a preponderance of the credible evidence.

### II.

WHEREFORE, PREMISES CONSIDERED, Defendant Liberty Insurance Corporation respectfully prays for a judgment that Plaintiff take nothing, that Defendant recover all its costs, and that Defendant be granted all other relief, at law and in equity, to which it may be justly entitled.

Respectfully submitted,

LINDOW ▪ STEPHENS ▪ TREAT LLP

By: _____

David R. Stephens
State Bar No. 19146100
Carrie D. Holloway
State Bar No. 24028270
One Riverwalk Place
700 N. St. Mary's St., Suite 1700
Telephone: (210) 227-2200
Facsimile: (210) 227-4602
dstephens@lstlaw.com
cholloway@lstlaw.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Liberty Insurance Corporation's Original Answer was served by facsimile and/or electronic service on the **7th** day of **August 2015**, upon the following counsel of record:

Robert A. Pollom
Mahsa Tajipour
KETTERMAN ROWLAND & WESTLUND
16500 San Pedro, Suite 302
San Antonio, Texas 78232
Robert@krwlawyers.com
mahsa@krwlawyers.com

_____
David R. Stephens/Carrie D. Holloway

# Exhibit B

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **BEVERLY PESTELLO** | § | |
| **Plaintiff** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO.** |
| | § | |
| **LIBERTY INSURANCE CORPORATION** | § | |
| **Defendant** | § | |

## LIST OF ALL COUNSEL OF RECORD

Party                                   Attorney(s)

Beverly Pestello                        Robert A. Pollom
                                        State Bar No. 24041703
                                        Mahsa Tajipour
                                        State Bar No. 24050163
                                        KETTERMAN ROWLAND & WESTLUND
                                        16500 San Pedro, Suite 302
                                        San Antonio, Texas 78232
                                        Telephone: (210) 490-7402
                                        Facsimile: (210) 490-8372
                                        Robert@krwlawyers.com
                                        mahsa@krwlawyers.com


Liberty Insurance Corporation           David R. Stephens
                                        State Bar No. 19146100
                                        Carrie D. Holloway
                                        State Bar No. 24028270
                                        One Riverwalk Place
                                        700 N. St. Mary's Street, Suite 1700
                                        San Antonio, Texas 78205
                                        (210) 227-2200 (Telephone
                                        (210) 227-4602 (Facsimile)
                                        dstephens@lstlaw.com
                                        cholloway@lstlaw.com

# Exhibit C



**Liberty Mutual Insurance**

P.O. Box 9099
150 Liberty Way
Dover, NH 03820
Telephone: (603)740-1200

July 28, 2015


JENNIFER MULDOON
175 BERKELEY STREET
BOSTON, MA 02116
Attn:   JENNIFER MULDOON


**RE: JAMES  PESTELLO**
**H37-298-764583-70**
**CLAIM ID: 032004234**
**DOL: 4/7/2015**
**POLICY EFFECTIVE:  12/3/2014**


I hereby certify that the attached is a true and accurate copy of the documents requested
for the policy listed above as maintained by the Liberty Mutual Insurance Group Inc. in
the usual and customary course of its business.

Brittani Labrecque, Office Assistant
Personal Insurance Production
July 28, 2015


BL
Enclosures

# Policy Declarations



**Liberty Mutual**
INSURANCE

## A summary of your homeowners insurance coverage

Thank you for insuring with us. Here is your renewal homeowners policy summary, which is effective as of 12/03/2014.



### INSURANCE INFORMATION

Named Insured
JAMES PESTELLO
BEVERLY PESTELLO

Mailing Address
13224  Circle N Dr E
HELOTES Tx 78023

Insured Location
Same as Mailing address above

Policy Number
H37-298-764583-70

Policy Period
12/03/2014-12/03/2015  12:01AM
standard time  at the address of the
Named Insured at Insured Location.



### QUESTIONS ABOUT YOUR POLICY?

By phone
1-830-387-7135

Liberty Mutual Office
1619  Commons St Ste
801
NEW BRAUNFELS TX
78130

Sales Representative
Christine HEWLETT

To report a claim
By phone
1-800-225-2467
Online
LibertyMutual.com/Claims

|  | | |
|---|---|---|
| Premium Summary | | |
| Standard Policy | $ | 2,106.00 |
| Additional Coverages | $ | 22.00 |
| Total 12 Month Policy Premium | $ | 2,128.00 |

Your discounts and benefits have been applied to your total policy premium. Please refer to the Discounts and Benefits section for more details.

Through your affiliation  with the The Seniors Coalition your policy includes exclusive group savings on your home insurance.

THIS IS NOT YOUR HOME INSURANCE BILL.



### INSURANCE GLOSSARY

For definitions of insurance terms,  please visit  LibertyMutual.com/ insurance-glossary.

## Coverage Information

### Standard Policy

| Section I Coverages | | LIMITS | PREMIUM |
|---|---|---|---|
| A. Dwelling | $ | 411,300 | |
| B. Other Structures  on Insured Location | $ | 41,130 | |
| C. Personal Property | $ | 246,780 | |
| D. Loss of Use of Insured Location | $ | 82,260 | |

| Section II Coverages | | | |
|---|---|---|---|
| E. Personal Liability  (each occurrence) | $ | 300,000 | |
| F. Medical Payments to Others (each person) | $ | 5,000 | |

Policy Deductibles - Section I

Losses covered under Section I are subject to a deductible of: $1,000

If losses are a result of Wind/Hail they are subject to a deductible of 1%: $4,113

If losses are a result of a Hurricane they are subject to a deductible of 1%: $4,113

Total Standard Policy                                $      2,106



## Coverage Information (continued)

| Additional Coverages | DEDUCTIBLE | LIMITS | PREMIUM |
|---|---|---|---|
| CREDIT CARD, FUND TRANSFER CARD, FORGERY $1,000 | | | $        0 |
| Coverage E & F increased limit | | | $      22 |

## Discounts and Benefits

Your discounts and benefits have been applied to your total policy premium.

- Inflation Protection Discount
- Early Shopper Discount
- Liberty Mutual Advantage®
  The Seniors Coalition
- Claims Free Discount
- Protective Device Discounts:
  Smoke Alarm/extinguisher/deadbolt
  Complete Local Fire Alarm
  COMPLETE CENTRAL STATION

**HOME DISCOUNTS**

For more information on discounts, please visit LibertyMutual.com/home-discounts.

## Endorsements — Changes to Your Policy

- LibertyGuard® Deluxe Homeowner Policy (HO 00 03 10 00)
- Special Provisions (HO 01 42 06 04)
- Hurricane Deductible (FMHO 3354 0912)
- Arson Reward (FMHO-993)
- WAIVER OF DED-THEFT (Fmho 3160 1008)
- INFLATION PROTECTION (Fmho-2835 11 03)
- Credit Card, Fund Transfer Card, Forgery (HO 04 53 10 00)
- Windstorm or Hail Deductible (FMHO 3366 0912)
- No SecII/Limit I-Day Care (HO 04 96 10 00)
- PROTECTIVE DEVICES (Ho 04 16 10 00)
- TEXAS HOMEOWNERS AMENDATORY ENDORSEMENT (Fmho 3510 1013)

## Mortgage Information

Mortgagee 1:
Live Well Financial Inc
PO BOX 39457
SOLON, OH 44139-0457

## Important Messages

Flood Insurance: Your Homeowners policy does not provide coverage for damage caused by flood, even if the flood is caused by a storm surge. Liberty Mutual can help you obtain this coverage through the Federal Emergency Management Agency (FEMA) if your community participates in the National Flood Insurance Program. Please call your representative for more information.

Hail/Windstorm Deductible and Hurricane Deductible: This policy contains separate deductibles for windstorm/hail losses and hurricane losses. This may result in higher out of pocket expenses. Your deductible will be listed with your Standard Policy in the Policy Deductibles section.

LibertyGuard® Deluxe Homeowners Policy Declarations
Coverage provided and underwritten by Liberty Insurance Corporation , Boston MA.

This policy, including endorsements listed above, is countersigned by:

Dexter R. Legg
Secretary

David H. Long
President

Stephen McAnena
Authorized Representative

**POLICY 0003**



# LibertyGuard Deluxe Homeowners Policy

Please read your policy and each endorsement carefully.

**To serve you best...**

Liberty Mutual has over 350 service offices throughout the United States
and Canada.  Please contact your service office shown on your Declarations
Page to report losses, or for any changes or questions about your insurance.
Payments should be sent to the office indicated on your bill.

**THIS POLICY IS NON ASSESSABLE**



## LIBERTYGUARD DELUXE HOMEOWNERS POLICY
## HO 00 03 EDITION 10 00

**TABLE OF CONTENTS**      **Page**

| | Page |
|---|---|
| Agreement | 1 |
| Definitions | 1-2 |
| **SECTION I - PROPERTY COVERAGES** | |
| Coverage A Dwelling | 3 |
| Coverage B Other Structures | 3 |
| Coverage C Personal Property | 3-5 |
| Coverage D Loss of Use | 5 |
| Additional Coverages | 5 |
| Debris Removal | 5 |
| Reasonable Repairs | 5-6 |
| Trees, Shrubs and Other Plants | 6 |
| Fire Department Service Charge | 6 |
| Property Removed | 6 |
| Credit Card, Fund Transfer Card, Forgery and Counterfeit Money | 6-7 |
| Loss Assessment | 7 |
| Collapse | 7 |
| Glass or Safety Glazing Material | 7-8 |
| Landlord's Furnishings | 8 |
| Ordinance or Law | 8 |
| Grave Markers | 8 |
| **SECTION I - PERILS INSURED AGAINST** | |
| Coverage A Dwelling and Coverage B Other Structures | 8-10 |
| Coverage C Personal Property | 10-11 |
| **SECTION I - EXCLUSIONS** | |
| Ordinance or Law | 11 |
| Earth Movement | 11-12 |
| Water Damage | 12 |
| Power Failure | 12 |
| Neglect | 12 |
| War | 12 |
| Nuclear Hazard | 12 |
| Intentional Loss | 12 |
| Governmental Action | 12 |
| Weather Conditions | 12 |
| Acts or Decisions | 12 |
| Faulty, Inadequate or Defective | 12 |
| **SECTION I - CONDITIONS** | |
| Insurable Interest and Limit of Liability | 13 |
| Your Duties After Loss | 13 |
| Loss Settlement | 13-14 |
| Loss to a Pair or Set | 14 |
| Appraisal | 14 |
| Other Insurance | 14 |
| Suit Against Us | 14-15 |
| Our Option | 15 |

| | Page |
|---|---|
| Loss Payment | 15 |
| Abandonment of Property | 15 |
| Mortgage Clause | 15 |
| No Benefit To Bailee | 15 |
| Nuclear Hazard Clause | 15 |
| Recovered Property | 15 |
| Volcanic Eruption Period | 15 |
| Policy Period | 15 |
| Concealment or Fraud | 15-16 |
| Loss Payable Clause | 16 |
| **SECTION II - LIABILITY COVERAGES** | |
| Coverage E Personal Liability | 16 |
| Coverage F Medical Payments to Others | 16 |
| **SECTION II - EXCLUSIONS** | |
| Motor Vehicle Liability | 16-17 |
| Watercraft Liability | 17 |
| Aircraft Liability | 17 |
| Hovercraft Liability | 17 |
| Coverage E Personal Liability and Coverage F Medical Payments to Others | 17-18 |
| Coverage E Personal Liability | 18-19 |
| Coverage F Medical Payments to Others | 19 |
| **SECTION II - ADDITIONAL COVERAGES** | |
| Claim Expenses | 19 |
| First Aid Expenses | 19 |
| Damage to Property of Others | 19-20 |
| Loss Assessment | 20 |
| **SECTION II - CONDITIONS** | |
| Limit of Liability | 20 |
| Severability of Insurance | 20 |
| Duties After Loss | 20-21 |
| Duties of an Injured Person | 21 |
| Payment of Claim | 21 |
| Suit Against Us | 21 |
| Bankruptcy of an Insured | 21 |
| Other Insurance | 21 |
| Policy Period | 21 |
| Concealment or Fraud | 21 |
| **SECTIONS I AND II - CONDITIONS** | |
| Liberalization Clause | 21 |
| Waiver or Change of Policy Provisions | 21 |
| Cancellation | 21-22 |
| Non-Renewal | 22 |
| Assignment | 22 |
| Subrogation | 22 |
| Death | 22 |
| *MUTUAL POLICY CONDITIONS | 23 |

*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.



# HOMEOWNERS 3 - SPECIAL FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

**B.** In addition, certain words and phrases are defined as follows:

**1.** "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in **b.** below, mean the following:

  **a.** Liability for "bodily injury" or "property damage" arising out of the:

    **(1)** Ownership of such vehicle or craft by an "insured";

    **(2)** Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

    **(3)** Entrustment of such vehicle or craft by an "insured" to any person;

    **(4)** Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

    **(5)** Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

  **b.** For the purpose of this definition:

    **(1)** Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

    **(2)** Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

    **(3)** Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

    **(4)** Motor vehicle means a "motor vehicle" as defined in **7.** below.

**2.** "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

**3.** "Business" means:

  **a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

  **b.** Any other activity engaged in for money or other compensation, except the following:

    **(1)** One or more activities, not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

    **(2)** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

    **(3)** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

    **(4)** The rendering of home day care services to a relative of an "insured".

**4.** "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

**5.** "Insured" means:

  **a.** You and residents of your household who are:

    **(1)** Your relatives; or

    **(2)** Other persons under the age of 21 and in the care of any person named above;

  **b.** A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

    **(1)** 24 and your relative; or

    **(2)** 21 and in your care or the care of a person described in **a.(1)** above; or



**c.** Under Section **II**:

  **(1)** With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **a.** or **b.** above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

  **(2)** With respect to a "motor vehicle" to which this policy applies:

    **(a)** Persons while engaged in your employ or that of any person included in **a.** or **b.** above; or

    **(b)** Other persons using the vehicle on an "insured location" with your consent.

Under both Sections **I** and **II,** when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

**6.** "Insured location" means:

  **a.** The "residence premises";

  **b.** The part of other premises, other structures and grounds used by you as a residence; and

    **(1)** Which is shown in the Declarations; or

    **(2)** Which is acquired by you during the policy period for your use as a residence;

  **c.** Any premises used by you in connection with a premises described in **a.** and **b.** above;

  **d.** Any part of a premises:

    **(1)** Not owned by an "insured"; and

    **(2)** Where an "insured" is temporarily residing;

  **e.** Vacant land, other than farm land, owned by or rented to an "insured";

  **f.** Land owned by or rented to an "insured" on which a one, two, three or four family dwelling is being built as a residence for an "insured";

  **g.** Individual or family cemetery plots or burial vaults of an "insured"; or

  **h.** Any part of a premises occasionally rented to an "insured" for other than "business" use.

**7.** "Motor vehicle" means:

  **a.** A self-propelled land or amphibious vehicle; or

  **b.** Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

**8.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

  **a.** "Bodily injury"; or

  **b.** "Property damage".

**9.** "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

**10.** "Residence employee" means:

  **a.** An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

  **b.** One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

**11.** "Residence premises" means:

  **a.** The one family dwelling where you reside;

  **b.** The two, three or four family dwelling where you reside in at least one of the family units; or

  **c.** That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.



## DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section **I** that exceeds the deductible amount shown in the Declarations.

## SECTION I - PROPERTY COVERAGES

### A. Coverage A - Dwelling

1. We cover:

   **a.** The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

   **b.** Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

2. We do not cover land, including land on which the dwelling is located.

### B. Coverage B - Other Structures

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

2. We do not cover:

   **a.** Land, including land on which the other structures are located;

   **b.** Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

   **c.** Other structures from which any "business" is conducted; or

   **d.** Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

3. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage **A**. Use of this coverage does not reduce the Coverage **A** limit of liability.

### C. Coverage C - Personal Property

1. **Covered Property**

   We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

   **a.** Others while the property is on the part of the "residence premises" occupied by an "insured"; or

   **b.** A guest or a "residence employee", while the property is in any residence occupied by an "insured".

2. **Limit For Property At Other Residences**

   Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage **C**, or $1,000, whichever is greater. However, this limitation does not apply to personal property:

   **a.** Moved from the "residence premises" because it is being repaired, renovated or rebuilt and is not fit to live in or store property in; or

   **b.** In a newly acquired principal residence for 30 days from the time you begin to move the property there.

3. **Special Limits Of Liability**

   The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage **C** limit of liability.

   **a.** $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

   **b.** $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This Limit includes the cost to research, replace or restore the information from the lost or damaged material.



c. $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

d. $1,500 on trailers or semitrailers not used with watercraft of all types.

e. $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

f. $2,500 for loss by theft of firearms and related equipment.

g. $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

h. $2,500 on property, on the "residence premises", used primarily for "business" purposes.

i. $500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and other property described in Categories **j.** and **k.** below.

j. $1,500 on electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources. Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category **j.**

k. $1,500 on electronic apparatus and accessories used primarily for "business" while away from the "residence premises" and not in or upon a "motor vehicle". The apparatus must be equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources. Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category **k.**

**4. Property Not Covered**

We do not cover:

a. Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

b. Animals, birds or fish;

c. "Motor vehicles".

   **(1)** This includes:

      **(a)** Their accessories, equipment and parts; or

      **(b)** Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicle". Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described above.

   The exclusion of property described in **(a)** and **(b)** above applies only while such property is in or upon the "motor vehicle".

   **(2)** We do cover "motor vehicles" not required to be registered for use on public roads or property which are:

      **(a)** Used solely to service an "insured's" residence; or

      **(b)** Designed to assist the handicapped;

d. Aircraft meaning any contrivance used or designed for flight including any parts whether or not attached to the aircraft.

   We do cover model or hobby aircraft not used or designed to carry people or cargo;

e. Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

f. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

g. Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in **E.10.** Landlord's Furnishings under Section I - Property Coverages;

h. Property rented or held for rental to others off the "residence premises";

i. "Business" data, including such data stored in:

   **(1)** Books of account, drawings or other paper records; or

   **(2)** Computers and related equipment.

   We do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market;



**j.** Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** - Property Coverages; or

**k.** Water or steam.

## D. Coverage D - Loss Of Use

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

### 1. Additional Living Expense

If a loss covered under Section **I** makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

### 2. Fair Rental Value

If a loss covered under Section **I** makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

### 3. Civil Authority Prohibits Use

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1.** Additional Living Expense and **2.** Fair Rental Value above for no more than two weeks.

### 4. Loss Or Expense Not Covered

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

## E. Additional Coverages
### 1. Debris Removal
**a.** We will pay your reasonable expense for the removal of:
**(1)** Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or
**(2)** Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

**b.** We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:
**(1)** Your tree(s) felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or
**(2)** A neighbor's tree(s) felled by a Peril Insured Against under Coverage **C**;

provided the tree(s):
**(3)** Damage(s) a covered structure; or
**(4)** Does not damage a covered structure, but:
    **(a)** Block(s) a driveway on the "residence premises" which prevent(s) a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or
    **(b)** Block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

### 2. Reasonable Repairs
**a.** We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.



**b.** If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

  **(1)** Increase the limit of liability that applies to the covered property; or

  **(2)** Relieve you of your duties, in case of a loss to covered property, described in **B.4.** under Section **I** - Conditions.

**3. Trees, Shrubs And Other Plants**

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

  **a.** Fire or Lightning;

  **b.** Explosion;

  **c.** Riot or Civil Commotion;

  **d.** Aircraft;

  **e.** Vehicles not owned or operated by a resident of the "residence premises";

  **f.** Vandalism or Malicious Mischief; or

  **g.** Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

**4. Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

**5. Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

**6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

  **a.** We will pay up to $500 for:

  **(1)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

  **(2)** Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

  **(3)** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

  **(4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

  All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

  This coverage is additional insurance. No deductible applies to this coverage.

  **b.** We do not cover:

  **(1)** Use of a credit card, electronic fund transfer card or access device:

    **(a)** By a resident of your household;

    **(b)** By a person who has been entrusted with either type of card or access device; or

    **(c)** If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

  **(2)** Loss arising out of "business" use or dishonesty of an "insured".

  **c.** If the coverage in **a.** above applies, the following defense provisions also apply:

  **(1)** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

  **(2)** If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will provide a defense at our expense by counsel of our choice.

**Liberty Mutual.**
INSURANCE

(3) We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.(3)** above.

**7. Loss Assessment**

a. We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage **A,** other than:

(1) Earthquake; or

(2) Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

b. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

c. Paragraph **P.** Policy Period under Section **I** - Conditions does not apply to this coverage.

This coverage is additional insurance.

**8. Collapse**

a. With respect to this Additional Coverage:

(1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

(2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

(3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

(4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

(1) The Perils Insured Against named under Coverage **C;**

(2) Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

(3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

(4) Weight of contents, equipment, animals or people;

(5) Weight of rain which collects on a roof; or

(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

c. Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **b.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

d. This coverage does not increase the limit of liability that applies to the damaged covered property.

**9. Glass Or Safety Glazing Material**

a. We cover:

(1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

(2) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.



**b.** This coverage does not include loss:

    **(1)** To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

    **(2)** On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in **a.(2)** above. A dwelling being constructed is not considered vacant.

**c.** This coverage does not increase the limit of liability that applies to the damaged property.

**10. Landlord's Furnishings**

    We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage **C,** other than Theft.

    This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

    This coverage does not increase the limit of liability applying to the damaged property.

**11. Ordinance Or Law**

**a.** You may use up to 10% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

    **(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

    **(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

    **(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

**b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

**c.** We do not cover:

    **(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

    **(2)** The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

    Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

**12. Grave Markers**

    We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage **C.**

    This coverage does not increase the limits of liability that apply to the damaged covered property.

**SECTION I - PERILS INSURED AGAINST**

**A. Coverage A - Dwelling And Coverage B - Other Structures**

**1.** We insure against risk of direct physical loss to property described in Coverages **A** and **B.**

**2.** We do not insure, however, for loss:

**a.** Excluded under Section **I** - Exclusions;

**b.** Involving collapse, except as provided in **E.8.** Collapse under Section **I** - Property Coverages; or

**c.** Caused by:

    **(1)** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if

you have used reasonable care to:

**(a)** Maintain heat in the building; or

**(b)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

**(2)** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

**(a)** Fence, pavement, patio or swimming pool;

**(b)** Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

**(c)** Retaining wall or bulkhead that does not support all or part of a building or other structure; or

**(d)** Pier, wharf or dock;

**(3)** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(4)** Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

**(5)** Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

**(a)** A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

**(b)** A storm drain, or water, steam or sewer pipes, off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

**(6)** Any of the following:

**(a)** Wear and tear, marring, deterioration;

**(b)** Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

**(c)** Smog, rust or other corrosion, or dry rot;

**(d)** Smoke from agricultural smudging or industrial operations;

**(e)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage **C**.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

**(f)** Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

**(g)** Birds, vermin, rodents, or insects; or

**(h)** Animals owned or kept by an "insured".

**Exception To c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a:

**(i)** Storm drain, or water, steam or sewer pipe, off the "residence premises"; or



**(ii)** Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment.

Section **I** - Exclusion **A.3.** Water Damage, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under **c.(5)** and **(6)** above.

Under **2.b.** and **c.** above, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**B. Coverage C - Personal Property**

We insure for direct physical loss to the property described in Coverage **C** caused by any of the following perils unless the loss is excluded in Section **I** - Exclusions.

**1. Fire Or Lightning**

**2. Windstorm Or Hail**

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

**3. Explosion**

**4. Riot Or Civil Commotion**

**5. Aircraft**

This peril includes self-propelled missiles and spacecraft.

**6. Vehicles**

**7. Smoke**

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

**8. Vandalism Or Malicious Mischief**

**9. Theft**

**a.** This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

**b.** This peril does not include loss caused by theft:

**(1)** Committed by an "insured";

**(2)** In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(3)** From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

**(4)** That occurs off the "residence premises" of:

**(a)** Trailers, semitrailers and campers;

**(b)** Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

**(c)** Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 60 days immediately before the loss.

**10. Falling Objects**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**11. Weight Of Ice, Snow Or Sleet**

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.



12. **Accidental Discharge Or Overflow Of Water Or Steam**
   a. This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.
   b. This peril does not include loss:
      (1) To the system or appliance from which the water or steam escaped;
      (2) Caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing;
      (3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or
      (4) Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.
   c. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.
   d. Section I - Exclusion **A.3.** Water Damage, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

13. **Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**
   This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.
   We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing**
   a. This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:
      (1) Maintain heat in the building; or
      (2) Shut off the water supply and drain all systems and appliances of water.
      However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

   b. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

15. **Sudden And Accidental Damage From Artificially Generated Electrical Current**
   This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

16. **Volcanic Eruption**
   This peril does not include loss caused by earthquake, land shock waves or tremors.

**SECTION I - EXCLUSIONS**
**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

1. **Ordinance Or Law**
   Ordinance Or Law means any ordinance or law:
   a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **A.1.a.** does not apply to the amount of coverage that may be provided for in **E.11.** Ordinance Or Law under Section I - Property Coverages;
   b. The requirements of which result in a loss in value to property; or
   c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.
      Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.
   This Exclusion **A.1.** applies whether or not the property has been physically damaged.

2. **Earth Movement**
   Earth Movement means:
   a. Earthquake, including land shock

waves or tremors before, during or after a volcanic eruption;

**b.** Landslide, mudslide or mudflow;

**c.** Subsidence or sinkhole; or

**d.** Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues    and then we will pay only for the ensuing loss.

This Exclusion **A.2.** does not apply to loss by theft.

**3. Water Damage**

Water Damage means:

**a.** Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

**b.** Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

**c.** Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

**4. Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

**5. Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**6. War**

War includes the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**7. Nuclear Hazard**

This Exclusion **A.7.** pertains to Nuclear Hazard to the extent set forth in **M.** Nuclear Hazard Clause under Section **I** - Conditions.

**8. Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

**9. Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage **A**, **B** or **C** by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

**B.** We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**1.** Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

**2.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**3.** Faulty, inadequate or defective:

**a.** Planning, zoning, development, surveying, siting;

**b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**c.** Materials used in repair, construction, renovation or remodeling; or

**d.** Maintenance;

of part or all of any property whether on or off the "residence premises".



## SECTION I - CONDITIONS

### A. Insurable Interest And Limit Of Liability

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

1. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

2. For more than the applicable limit of liability.

### B. Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;

2. Notify the police in case of loss by theft;

3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I - Property Coverages;

4. Protect the property from further damage. If repairs to the property are required, you must:

   a. Make reasonable and necessary repairs to protect the property; and

   b. Keep an accurate record of repair expenses;

5. Cooperate with us in the investigation of a claim;

6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7. As often as we reasonably require:

   a. Show the damaged property;

   b. Provide us with records and documents we request and permit us to make copies; and

   c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;

8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   a. The time and cause of loss;

   b. The interests of all "insureds" and all others in the property involved and all liens on the property;

   c. Other insurance which may cover the loss;

   d. Changes in title or occupancy of the property during the term of the policy;

   e. Specifications of damaged buildings and detailed repair estimates;

   f. The inventory of damaged personal property described in **6.** above;

   g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and

   h. Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I - Property Coverages, stating the amount and cause of loss.

### C. Loss Settlement

In this Condition **C.,** the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **E.11.** Ordinance Or Law under Section I - Property Coverages. Covered property losses are settled as follows:

1. Property of the following types:

   a. Personal property;

   b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

   c. Structures that are not buildings; and

   d. Grave markers, including mausoleums;

   at actual cash value at the time of loss but not more than the amount required to repair or replace.

2. Buildings covered under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

   a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

      (1) The limit of liability under this policy that applies to the building;

      (2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

      (3) The necessary amount actually spent to repair or replace the



damaged building.

If the building is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the building had been built at the original premises.

**b.** If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

**(1)** The actual cash value of that part of the building damaged; or

**(2)** That proportion of the cost to repair or replace, after application of any deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

**c.** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

**(1)** Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

**(2)** Those supports described in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

**(3)** Underground flues, pipes, wiring and drains.

**d.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and **b.** above.

However, if the cost to repair or replace the damage is both:

**(1)** Less than 5% of the amount of insurance in this policy on the building; and

**(2)** Less than $2,500;

we will settle the loss as noted in **2.a.** and **b.** above whether or not actual repair or replacement is complete.

**e.** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **C.** Loss Settlement, provided you notify us of your intent to do so within 180 days after the date of loss.

**D. Loss To A Pair Or Set**

In case of loss to a pair or set we may elect to:

**1.** Repair or replace any part to restore the pair or set to its value before the loss; or

**2.** Pay the difference between actual cash value of the property before and after the loss.

**E. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**1.** Pay its own appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

**F. Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

**1.** Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

**2.** A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

**G. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of



the terms under Section **I** of this policy and the action is started within two years after the date of loss.

**H. Our Option**

If you give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

**I. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

1. Reach an agreement with you;
2. There is an entry of a final judgment; or
3. There is a filing of an appraisal award with us.

**J. Abandonment Of Property**

We need not accept any property abandoned by an "insured".

**K. Mortgage Clause**

1. If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:
   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;
   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and
   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **E.** Appraisal, **G.** Suit Against Us and **I.** Loss Payment under Section **I** - Conditions also apply to the mortgagee.

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:
   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**L. No Benefit To Bailee**

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**M. Nuclear Hazard Clause**

1. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

2. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

3. This policy does not apply under Section **I** to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**N. Recovered Property**

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**O. Volcanic Eruption Period**

One or more volcanic eruptions that occur within a 72 hour period will be considered as one volcanic eruption.

**P. Policy Period**

This policy applies only to loss which occurs during the policy period.

**Q. Concealment Or Fraud**

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

1. Intentionally concealed or misrepresented any material fact or circumstance;



**2.** Engaged in fraudulent conduct; or
**3.** Made false statements;
relating to this insurance.

**R. Loss Payable Clause**

If the Declarations show a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

## SECTION II - LIABILITY COVERAGES

**A. Coverage E - Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

**1.** Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

**2.** Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

**B. Coverage F - Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

**1.** To a person on the "insured location" with the permission of an "insured"; or

**2.** To a person off the "insured location", if the "bodily injury":

  **a.** Arises out of a condition on the "insured location" or the ways immediately adjoining;

  **b.** Is caused by the activities of an "insured";

  **c.** Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

  **d.** Is caused by an animal owned by or in the care of an "insured".

## SECTION II - EXCLUSIONS

**A. "Motor Vehicle Liability"**

**1.** Coverages **E** and **F** do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

  **a.** Is registered for use on public roads or property;

  **b.** Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

  **c.** Is being:

    **(1)** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

    **(2)** Rented to others;

    **(3)** Used to carry persons or cargo for a charge; or

    **(4)** Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

**2.** If Exclusion **A.1.** does not apply, there is still no coverage for "motor vehicle liability" unless the "motor vehicle" is:

  **a.** In dead storage on an "insured location";

  **b.** Used solely to service an "insured's" residence;

  **c.** Designed to assist the handicapped and, at the time of an "occurrence", it is:

    **(1)** Being used to assist a handicapped person; or

    **(2)** Parked on an "insured location";

  **d.** Designed for recreational use off public roads and:

    **(1)** Not owned by an "insured"; or

    **(2)** Owned by an "insured" provided the "occurrence" takes place on an "insured location" as defined in Definitions **B. 6.a., b., d., e.** or **h.**; or

  **e.** A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

    **(1)** A golfing facility and is parked or stored there, or being used by an "insured" to:

      **(a)** Play the game of golf or for other recreational or leisure



activity allowed by the facility;
- **(b)** Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or
- **(c)** Cross public roads at designated points to access other parts of the golfing facility; or
- **(2)** A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

**B.** **"Watercraft Liability"**
1. Coverages **E** and **F** do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:
   - **a.** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;
   - **b.** Rented to others;
   - **c.** Used to carry persons or cargo for a charge; or
   - **d.** Used for any "business" purpose.
2. If Exclusion **B.1.** does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:
   - **a.** Is stored;
   - **b.** Is a sailing vessel, with or without auxiliary power, that is:
     - **(1)** Less than 26 feet in overall length; or
     - **(2)** 26 feet or more in overall length and not owned by or rented to an "insured"; or
   - **c.** Is not a sailing vessel and is powered by:
     - **(1)** An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:
       - **(a)** 50 horsepower or less and not owned by an "insured"; or
       - **(b)** More than 50 horsepower and not owned by or rented to an "insured"; or
     - **(2)** One or more outboard engines or motors with:
       - **(a)** 25 total horsepower or less;
       - **(b)** More than 25 horsepower if the outboard engine or motor is not owned by an "insured";
       - **(c)** More than 25 horsepower if the outboard engine or motor

is owned by an "insured" who acquired it during the policy period; or
- **(d)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:
  - **(i)** You declare them at policy inception; or
  - **(ii)** Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The coverages in **(c)** and **(d)** above apply for the policy period. Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

**C.** **"Aircraft Liability"**
This policy does not cover "aircraft liability".

**D.** **"Hovercraft Liability"**
This policy does not cover "hovercraft liability".

**E.** **Coverage E - Personal Liability And Coverage F - Medical Payments To Others**
Coverages **E** and **F** do not apply to the following:
1. **Expected Or Intended Injury**
   "Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":
   - **a.** Is of a different kind, quality or degree than initially expected or intended; or
   - **b.** Is sustained by a different person, entity, real or personal property, than initially expected or intended.
   However, this Exclusion **E.1.** does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;
2. **"Business"**
   - **a.** "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".
   This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".



b.  This Exclusion **E.2.** does not apply to:

(1) The rental or holding for rental of an "insured location";

(a) On an occasional basis if used only as a residence;

(b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(c) In part, as an office, school, studio or private garage; and

(2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

**3.  Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

**4.  "Insured's" Premises Not An "Insured Location"**

"Bodily injury" or "property damage" arising out of a premises:

a.  Owned by an "insured";

b.  Rented to an "insured"; or

c.  Rented to others by an "insured";

that is not an "insured location";

**5.  War**

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

a.  Undeclared war, civil war, insurrection, rebellion or revolution;

b.  Warlike act by a military force or military personnel; or

c.  Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

**6.  Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

**7.  Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

**8.  Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions **A.** "Motor Vehicle Liability", **B.** "Watercraft Liability", **C.** "Aircraft Liability", **D.** "Hovercraft Liability" and **E.4.** "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

**F.  Coverage E - Personal Liability**

Coverage **E** does not apply to:

**1.** Liability:

a.  For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in **D.** Loss Assessment under Section **II** - Additional Coverages;

b.  Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

(1) That directly relate to the ownership, maintenance or use of an "insured location"; or

(2) Where the liability of others is assumed by you prior to an "occurrence";

unless excluded in **a.** above or elsewhere in this policy;

**2.** "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

**3.** "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

**4.** "Bodily injury" to any person eligible to receive any benefits voluntarily provided



or required to be provided by an "insured" under any:

  **a.** Workers' compensation law;

  **b.** Non-occupational disability law; or

  **c.** Occupational disease law;

**5.** "Bodily injury" or "property damage" for which an "insured" under this policy:

  **a.** Is also an insured under a nuclear energy liability policy issued by the:

    **(1)** Nuclear Energy Liability Insurance Association;

    **(2)** Mutual Atomic Energy Liability Underwriters;

    **(3)** Nuclear Insurance Association of Canada;

    or any of their successors; or

  **b.** Would be an insured under such a policy but for the exhaustion of its limit of liability; or

**6.** "Bodily injury" to you or an "insured" as defined under Definitions **5.a.** or **b.**

  This exclusion also applies to any claim made or suit brought against you or an "insured":

  **a.** To repay; or

  **b.** Share damages with;

  another person who may be obligated to pay damages because of "bodily injury" to an "insured".

### G. Coverage F - Medical Payments To Others

Coverage **F** does not apply to "bodily injury":

**1.** To a "residence employee" if the "bodily injury":

  **a.** Occurs off the "insured location"; and

  **b.** Does not arise out of or in the course of the "residence employee's" employment by an "insured";

**2.** To any person eligible to receive benefits voluntarily provided or required to be provided under any:

  **a.** Workers' compensation law;

  **b.** Non-occupational disability law; or

  **c.** Occupational disease law;

**3.** From any:

  **a.** Nuclear reaction;

  **b.** Nuclear radiation; or

  **c.** Radioactive contamination;

  all whether controlled or uncontrolled or however caused; or

  **d.** Any consequence of any of these; or

**4.** To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

### A. Claim Expenses

We pay:

**1.** Expenses we incur and costs taxed against an "insured" in any suit we defend;

**2.** Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage **E** limit of liability. We need not apply for or furnish any bond;

**3.** Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

**4.** Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

### B. First Aid Expenses

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

### C. Damage To Property Of Others

**1.** We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

**2.** We will not pay for "property damage":

  **a.** To the extent of any amount recoverable under Section **I;**

  **b.** Caused intentionally by an "insured" who is 13 years of age or older;

  **c.** To property owned by an "insured";

  **d.** To property owned by or rented to a tenant of an "insured" or a resident in your household; or

  **e.** Arising out of:

    **(1)** A "business" engaged in by an "insured";

    **(2)** Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

    **(3)** The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".



This exclusion **e.(3)** does not apply to a "motor vehicle" that:

**(a)** Is designed for recreational use off public roads;

**(b)** Is not owned by an "insured"; and

**(c)** At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

**D. Loss Assessment**

1. We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

   **a.** "Bodily injury" or "property damage" not excluded from coverage under Section **II** - Exclusions; or

   **b.** Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

      **(1)** Is elected by the members of a corporation or association of property owners; and

      **(2)** Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

2. Paragraph **I.** Policy Period under Section **II** - Conditions does not apply to this Loss Assessment Coverage.

3. Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

   **a.** One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

   **b.** A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

4. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**SECTION II - CONDITIONS**

**A. Limit Of Liability**

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** limit of liability shown in the Declarations.

**B. Severability Of Insurance**

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

**C. Duties After "Occurrence"**

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

   **a.** The identity of the policy and the "named insured" shown in the Declarations;

   **b.** Reasonably available information on the time, place and circumstances of the "occurrence"; and

   **c.** Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

4. At our request, help us:

   **a.** To make settlement;

   **b.** To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";



**c.** With the conduct of suits and attend hearings and trials; and

**d.** To secure and give evidence and obtain the attendance of witnesses;

**5.** With respect to **C.** Damage To Property Of Others under Section **II** - Additional Coverages, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;

**6.** No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**D. Duties Of An Injured Person - Coverage F - Medical Payments To Others**

**1.** The injured person or someone acting for the injured person will:

**a.** Give us written proof of claim, under oath if required, as soon as is practical; and

**b.** Authorize us to obtain copies of medical reports and records.

**2.** The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E. Payment Of Claim - Coverage F - Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

**1.** No action can be brought against us unless there has been full compliance with all of the terms under this Section **II.**

**2.** No one will have the right to join us as a party to any action against an "insured".

**3.** Also, no action with respect to Coverage **E** can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

**I. Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

**1.** Intentionally concealed or misrepresented any material fact or circumstance;

**2.** Engaged in fraudulent conduct; or

**3.** Made false statements;

relating to this insurance.

**SECTIONS I AND II - CONDITIONS**

**A. Liberalization Clause**

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

**1.** A subsequent edition of this policy; or

**2.** An amendatory endorsement.

**B. Waiver Or Change Of Policy Provisions**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**C. Cancellation**

**1.** You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

**2.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

**a.** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

**b.** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

c.  When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

   **(1)** If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

   **(2)** If the risk has changed substantially since the policy was issued.

   This can be done by letting you know at least 30 days before the date cancellation takes effect.

d.  When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

**3.** When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**4.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**D. Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**E. Assignment**

Assignment of this policy will not be valid unless we give our written consent.

**F. Subrogation**

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage **F** or Paragraph **C.** Damage To Property Of Others under Section **II** - Additional Coverages.

**G. Death**

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

**1.** We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

**2.** "Insured" includes:

   a.  An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

   b.  With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.



| **\*MUTUAL POLICY CONDITIONS** |
| --- |

You are a member of the Liberty Mutual Fire Insurance Company while this policy is in force. Membership entitles you to vote in person or by proxy at meetings of the company. The Annual Meeting is in Boston, Massachusetts, on the second Wednesday in April each year at 11 o'clock in the morning.

Also, as a member, you will receive any dividends declared on this policy by the Directors.

This policy is classified in Dividend Class II.

This policy has been signed by our President and Secretary at Boston, Massachusetts, and countersigned on the Declarations Page by an authorized representative.

\*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

**SECRETARY**                                                    **PRESIDENT**

Includes copyrighted material of Insurance Services Office,
with its permission.
Copyright, Insurance Services Office, Inc., 1999

POLICY NUMBER:



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# CREDIT CARD, ELECTRONIC FUND TRANSFER CARD OR ACCESS DEVICE, FORGERY AND COUNTERFEIT MONEY COVERAGE

**HOMEOWNERS
HO 04 53 10 00**

**INCREASED LIMIT**

**SCHEDULE\***

| SECTION I - PROPERTY COVERAGES |
| --- |
| **ADDITIONAL COVERAGES** |
| 6.  **Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**<br>The limit of liability for this coverage is increased as noted below.<br><br>**Increase In Limit Of Liability**  **Total Limit Of Liability** |
| All other provisions of this policy apply. |
| \*Entries may be left blank if shown elsewhere in this policy for this coverage. |

Copyright, Insurance Services Office, Inc., 1999



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

HOMEOWNERS

# SPECIAL PROVISIONS - TEXAS

HO 01 42 06 04

**DEFINITIONS**

The following are added to Paragraph **B.:**

**12.** "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**13.** "Business day" means a day other than a Saturday, Sunday or holiday recognized by the state of Texas.

**SECTION I - PROPERTY COVERAGES**

For Form **HO 00 05,** Paragraph **E.10.k.(2)(d)** is deleted and replaced by the following:

**(d)** Caused by constant or repeated seepage or leakage of water or steam or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years.

For all forms except **HO 00 08,** the following is added to Paragraph **E.11. Ordinance Or Law:**

**d.** If the insured property is located in an area which is eligible for coverage through the Texas Windstorm Insurance Association, the coverage described above, also applies to the increased cost you incur due to the repair, replacement or demolition required for the dwelling to comply with the building specifications contained in the Texas Windstorm Insurance Association's plan of operation.

(This is Paragraph **C.11.** in Form **HO 00 04** and **D.10.** in Form **HO 00 06.**)

**SECTION I - PERILS INSURED AGAINST**

For Forms **HO 00 02** and **HO 00 06,** Paragraph **12.b.(5)** is deleted and replaced by the following:

**(5)** Caused by constant or repeated seepage or leakage of water or steam or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years.

For Form **HO 00 04,** Paragraph **12.b.(4)** is deleted and replaced by the following:

**(4)** Caused by constant or repeated seepage or leakage of water or steam or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years.

**For Form HO 00 03:**

Paragraph **A.2.c.(5)** is deleted and replaced by the following:

**(5)** Constant or repeated seepage or leakage of water or steam or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

Paragraph **A.2.c.(6)(c)** is deleted and replaced by the following:

**(c)** Smog, rust or other corrosion, wet or dry rot;

Paragraph **B.12.b.(4)** is deleted and replaced by the following:

**(4)** Caused by constant or repeated seepage or leakage of water or steam or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years.

For Form **HO 00 05:**

Paragraph **A.2.d.** is deleted and replaced by the following:

**d.** Constant or repeated seepage or leakage of water or steam or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

Paragraph **A.2.e.(3)** is deleted and replaced by the following:

**(3)** Smog, rust or other corrosion, wet or dry rot;

**SECTION I - EXCLUSIONS**

**8. Intentional Loss** is deleted and replaced by the following:

**8. Intentional Loss**

**a.** Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage even "insureds" who did not commit or conspire to commit the act causing the loss.

**b.** However, this exclusion does not apply to an "insured" who did not cooperate in or contribute to the creation of the loss if that "insured" has:



**(1)** Filed a police report; and
**(2)** Cooperated with law enforcement investigation or prosecution relating to any other "insured" causing the intentional loss.

**c.** If we pay a claim pursuant to Paragraph **8.b.**, our payment to the "insured" is limited to that "insured's" insurable interest in the property less any payments we first made to a mortgagee or other party with a secured interest in the policy. In no event will we pay more than the limit of liability. As a condition of payment for intentional loss caused by another "insured" under this exception to the exclusion, we may require an assignment of rights of recovery to the extent that payment is made by us.

The following exclusion is added.

**10. "Fungi" Or Microbes**

**a.** "Fungi" or microbes, means the presence, growth, proliferation, spread or any activity of "fungi" or microbes.

This exclusion also applies to the cost:

**(1)** To remove "fungi" or microbes from property covered under Section **I** - Property Coverages;

**(2)** To tear out and replace any part of the building or other covered property as needed to gain access to the "fungi" or microbes; and

**(3)** Of testing of air or property to confirm the absence, presence or level of "fungi" or microbes;

**b.** Exclusion **10.a.** applies unless the "fungi" or microbes are located upon the portion of covered property which must be repaired or replaced because of direct physical damage resulting from sudden and accidental discharge or overflow of water which would otherwise be covered under this policy. For purposes of this exclusion, sudden and accidental shall include a loss event that is hidden or concealed for a period of time until it is detectable. A hidden loss must be reported to us no later than 30 days after the date it was detected or should have been detected.

**c.** However, the exception to the exclusion described in **10.b.** does not include:

**(1)** The cost to treat, contain, remove or dispose of the "fungi" or microbes beyond that which is required to repair or replace the covered property physically damaged by water;

**(2)** The cost of any testing of air or property to confirm the absence, presence or level of "fungi" or microbes whether performed prior to, during or after removal, repair, restoration or replacement;

**(3)** The cost of any decontamination of the "residence premises"; and

**(4)** Any increase in loss under Coverage **D** - Loss of Use and Additional Coverage **1.** Debris Removal resulting from **c.(1)**, **(2)** and **(3)**.

Direct loss by fire, smoke, or explosion resulting from "fungi" or microbes is covered.

(This is Paragraph **A.10.** in Form **HO 00 03** and **HO 00 05.**)

**SECTION I - CONDITIONS**

The following paragraph is added to Paragraph **A.** Insurable Interest And Limit Of Liability:

**POLICY A LIQUIDATED DEMAND**

A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. This provision shall not apply to personal property.

**B. Duties After Loss** is deleted and replaced by the following:

**B. Duties After Loss**

**1. Your Duties After Loss**

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, or an "insured" seeking coverage, or a representative of either:

**a.** Give prompt notice to us or our agent;

**b.** Notify the police in case of a loss by theft;

**c.** Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money Coverage under Section **I** - Property Coverages;

**d.** Protect the property from further damage. If repairs to the property are required, you must:

**(1)** Make reasonable repairs and necessary repairs to protect the property; and

**(2)** Keep an accurate record of repair expenses;

**e.** Cooperate with us in the investigation of a claim;



f.  Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

g.  As often as we reasonably require:

(1)  Show the damaged property;

(2)  Provide us with records and documents we request and permit us to make copies; and

(3)  Submit to examination under oath, while not in the presence of another "insured", and sign the same;

h.  Send to us, within 91 days after our request, your signed, sworn proof of loss on a standard form supplied by us. We must request a signed, sworn proof of loss within 15 days after we receive your written notice, or we waive our right to require a proof of loss. Such waiver will not waive our other rights under this policy.

(1)  This proof of loss shall set forth, to the best of your knowledge and belief:

(a)  The time and cause of loss;

(b)  The interests of all "insureds" and all others in the property involved and all liens on the property;

(c)  Other insurance which may cover the loss;

(d)  Changes in the title or occupancy of the property during the term of the policy;

(e)  Specifications of the damaged buildings and detailed repair estimates;

(f)  The inventory of damaged personal property described in **B.1.e.** above;

(g)  Receipts for additional living expenses incurred and records that support the fair rental value loss; and

(h)  Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** - Property Coverages, stating the amount and cause of loss.

(2)  If you elect to make claim under the Replacement Cost Coverage of this policy, this proof of loss shall also state, to the best of your knowledge and belief:

(a)  The replacement cost of the described dwelling;

(b)  The replacement cost of any other building on which loss is claimed; or

(c)  The full cost of repair or replacement of loss without deduction for depreciation.

2.  **Our Duties After Loss**

a.  No later than 15 days after we receive your written notice of claim, we must:

(1)  Acknowledge receipt of the claim;

If our acknowledgment of the claim is not in writing, we will keep a record of the date, means and content of our acknowledgment;

(2)  Begin any investigation of the claim;

(3)  Specify the information you must provide in accordance with Paragraph **B.1.** Your Duties After Loss above;

We may request more information, if during the investigation of the claim such additional information is necessary.

b.  After we receive the information we request, we must notify you in writing whether the claim will be paid or has been denied or whether more information is needed:

(1)  Within 15 "business days"; or

(2)  Within 30 days if we have reason to believe the loss resulted from arson;

c.  If we do not approve payment of your claim or require more time for processing your claim, we must:

(1)  Give the reason for denying your claim; or

(2)  Give the reasons we require more time to process your claim. But we must either approve or deny your claim within 45 days after requesting more time.

For Forms **HO 00 02, HO 00 03** and **HO 00 05,** Paragraph **C.1.** in **Loss Settlement** is deleted and replaced by the following:

**C. Loss Settlement**

1.  Property of the following types:



**a.** Personal property other than jewelry;

**b.** Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

**c.** Structures that are not buildings; and

**d.** Grave markers, including mausoleums;

at actual cash value at the time of loss but not more than the amount required to repair or replace:

For Form **HO 00 04, C. Loss Settlement** is deleted and replaced by the following:

**C. Loss Settlement**

**1.** Covered property losses other than jewelry are settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

**2.** Jewelry losses are settled at replacement cost at the time of loss without deduction for depreciation.

For Form **HO 00 06, Paragraph C.1.** in **Loss Settlement** is deleted and replaced by the following:

**C. Loss Settlement**

**1.** Personal property and grave markers, including mausoleums at actual cash value at the time of loss but not more than the amount required to repair or replace. This does not include loss to jewelry.

For Form **HO 00 08, Paragraph C.1.** in **Loss Settlement** is deleted and replaced by the following:

**C. Loss Settlement**

**1.** Property of the following types:

**a.** Personal property other than jewelry;

**b.** Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

**c.** Structures that are not buildings;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

For all forms except **HO 00 04**, Paragraph **3.** is added to **C. Loss Settlement:**

**3.** Jewelry at replacement cost at the time of loss without deduction for depreciation.

**D. Loss To A Pair Or Set** is deleted and replaced by the following:

**D. Loss To A Pair Or Set**

**1.** In case of loss to a pair or set other than jewelry we may elect to:

**a.** Repair or replace any part to restore the pair or set to its value before the loss; or

**b.** Pay the difference between actual cash value of the property before

and after the loss.

**2.** Loss to a jewelry pair or set will be settled at replacement cost at the time of loss without deduction for depreciation.

**G. Suit Against Us** is deleted and replaced by the following:

**G. Suit Against Us**

No suit or action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this policy. Action brought against us must be started within two years and one day after the cause of action accrues.

**I. Loss Payment** is deleted and replaced by the following:

**I. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to payment.

If we notify you that we will pay your claim, or part of your claim, we must pay within 5 "business days" after we notify you. If payment of your claim or part of your claim requires the performance of an act by you, we must pay within 5 "business days" after the date you perform the act.

**K. Mortgage Clause** is deleted and replaced by the following:

**K. Mortgage Clause (Without Contribution)**

**1.** We will pay for any covered loss of or damage to buildings or structures to the mortgagee shown on the declarations page as interests appear;

**2.** The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building structure;

**3.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgagee has the right to receive loss payment if the mortgagee:

**a.** At our request, pays any premium due under this policy, if you have failed to do so;

**b.** Submits a signed, sworn statement of loss within 91 days after receiving notice from us of your failure to do so;

**c.** Has notified us of any changes in ownership, occupancy or substantial changes in risk known to the mortgagee;

All of the terms of this policy will then apply directly to the mortgagee. Failure of the mortgagee to comply with **3.a., 3.b.,** or **3.c.** above shall void this policy as to the interest of the mortgagee.



**Liberty Mutual.**
INSURANCE

4. If we pay the mortgagee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   **a.** The mortgagee's rights under the mortgage will be transferred to us to the extent of the amount we pay.

   **b.** The mortgagee's right to recover the full amount of the mortgagee's claim will not be impaired.

At our option, we may pay the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

5. If this policy is cancelled, we will give the mortgagee specifically named on the declarations page written notice of cancellation.

If we cancel the policy, we will give the mortgagee the same number of days notice of cancellation we give to you.

If you cancel the policy, we will give the mortgagee notice of cancellation to be effective on the date stated in the notice. The date of cancellation cannot be before the 10th day after the date we mail the notice.

We will not give notice of cancellation to any successor or assignee of the mortgagee named in the policy.

6. If the property described under Coverage **A** - Dwelling or Coverage **B** - Other Structures is foreclosed upon under the deed of trust, the mortgagee may cancel this policy of insurance and will be entitled to any unearned premium from this policy.

The mortgagee must credit any unearned premium against any deficiency owed by the borrower and return any unearned premium not so credited to the borrower. The unearned premium will be figured using the customary pro rata procedures.

7. If we elect not to renew this policy, the mortgagee specifically named on the declarations page will be given 30 days written notice of the nonrenewal.

The following conditions are added:

**RESIDENTIAL COMMUNITY PROPERTY CLAUSE**

This policy, subject to all other terms and conditions, when covering residential community property, as defined by state law, shall remain in full force and effect as to the interest of each spouse covered, irrespective of divorce or change of ownership between the spouses unless excluded by endorsement attached to this policy until the expiration of the policy or until cancelled in accordance with the terms and conditions of this policy.

**CATASTROPHE CLAIMS**

If a claim results from a weather related catastrophe or a major natural disaster, each claim handling deadline shown in **B.** Duties After Loss and **I.** Loss Payment is extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather related event which:

   **a.** Is declared a disaster under the Texas Disaster Act of 1975; or

   **b.** Is determined to be a catastrophe by the Texas Department of Insurance.

**SECTION II - EXCLUSIONS**

Paragraph **E.1.** Expected Or Intended Injury is deleted and replaced by the following:

1. **Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured".

However, this Exclusion **E.1.** does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

Paragraph **E.6.** Communicable Disease is deleted and replaced by the following:

6. **Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of sickness or disease by an "insured" through sexual contact;

Paragraph **E.7.** Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse is deleted and replaced by the following:

7. **Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse.

For the purposes of this exclusion, abuse means an act which is committed with the intent to cause harm; or

**SECTIONS I AND II - CONDITIONS**

**C. Cancellation** is deleted and replaced by the following:

**C. Cancellation**

1. You may cancel this policy at any time by notifying us of the date cancellation is to take effect. We will send you any refund due when the policy is returned to us.

2. We may cancel this policy at any time for the reasons stated in this condition by mailing you notice in writing of the date cancellation takes effect.



a. If this policy has been in effect for less than 60 days and is not a renewal policy, we may not cancel this policy unless:

(1) We identify a condition that:

(a) Creates an increased risk of hazard;

(b) Was not disclosed in the application for insurance coverage; and

(c) Is not the subject of a prior claim;

(2) Before the effective date of the policy we do not accept a copy of a required inspection report that:

(a) Was completed by an inspector licensed by the Texas Real Estate Commission or who is otherwise authorized to perform inspections; and

(b) Is dated not earlier than the 90th day before the effective date of the policy.

An inspection report is deemed accepted unless we reject it before the 11th day after the date we receive it;

(3) You do not pay the premium or any portion of the premium due;

(4) The Texas Department of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state;

(5) You submit a fraudulent claim; or

(6) There is an increase in the hazard covered by this policy that is within your control and that would produce an increase in the premium rate of this policy.

The effective date of cancellation cannot be before:

(1) The 10th day after we mail notice if we cancel for reasons **(3)**, **(4)**, **(5)**, or **(6)** above.

(2) The 30th day after we mail notice if we cancel for any other reason.

b. If this policy has been in effect 60 days or more, or at any time if it is a renewal policy, we may not cancel this policy unless:

(1) You do not pay the premium or any portion of the premium due.

(2) The Texas Department of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state.

(3) You submit a fraudulent claim.

(4) There is an increase in the hazard covered by this policy that is within your control and that would produce an increase in the premium rate of this policy.

The effective date of cancellation cannot be before the 10th day after we mail the notice. Our notice of cancellation must state the reason for cancellation.

3. If we cancel, our notice to you will state that this refund is not included with the notice, it will be returned on demand.

4. We may not cancel this policy solely because you are an elected official.

**D. Nonrenewal** is deleted and replaced by the following:

**D. Refusal To Renew**

1. We may not refuse to renew this policy because of claims for losses resulting from natural causes.

2. We may not refuse to renew this policy solely because you are an elected official.

3. We may refuse to renew this policy if you have filed three or more claims under the policy in any three year period that do not result from natural causes.

If you have filed two claims in a period of less than three years, we may notify you in writing, that if you file a third claim during the three-year period, we may refuse to renew this policy by providing you proper notice of our refusal to renew as provided in **4.** below. If we do not notify you after the second claim, we may not refuse to renew this policy because of losses.

A claim does not include a claim that is filed but is not paid or payable under the policy.

4. If we refuse to renew this policy, we must deliver to you, or mail to you at your mailing address shown on the declarations page and any mortgagee named on the declarations page, written notice of our refusal to renew not later than the 30th day before the date on which this policy expires. Proof of mailing will be sufficient proof of notice. If we fail to give you proper notice of our decision not to renew, you may require us to renew the policy.

All other provisions of this policy apply.



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## WINDSTORM OR HAIL DEDUCTIBLE — DWELLING

**The following special Deductible is added to the policy:**

For the premium charged, we will pay only that part of the total of covered direct physical loss to property covered under Section I of this policy caused by Windstorm or Hail that exceeds the Windstorm or Hail Deductible as shown on the Declarations as follows:

### A. When this Windstorm or Hail Deductible Applies

This Deductible applies in the event of direct physical loss to property covered under this policy caused directly or indirectly by the perils of Windstorm or Hail.

If this policy includes a Hurricane Deductible endorsement that is applicable to a loss, this Windstorm or Hail Deductible endorsement will not apply to that loss.

### B. How the Windstorm or Hail Deductible Amount is Determined

The Windstorm Deductible may be either a fixed dollar amount or percentage based, but not both. If percentage based, the amount of the applicable Windstorm or Hail Deductible shall be determined by multiplying the Coverage A limit of liability as shown in the Declarations by the Windstorm or Hail Deductible Percentage amount as shown on the Declarations.

**For Example,** *if your Windstorm or Hail Deductible is 2%, and your Coverage A limit of liability is $100,000, the dollar amount of your Windstorm or Hail Deductible is $2,000.*

If no Windstorm or Hail Deductible Percentage is shown on the Declarations, the amount of the applicable Windstorm or Hail Deductible shall be the dollar amount for the Windstorm or Hail Deductible as shown on the Declarations.

### C. Other Deductibles

If the Windstorm or Hail Deductible amount under this endorsement is less than the base policy Section I Deductible as shown on the Declarations, the base policy Section I Deductible shall apply.

This endorsement does not provide additional insurance. All other provisions of this policy apply.



## HURRICANE DEDUCTIBLE

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**A. Definitions**

The following definitions are added for the purposes of the deductible provided by this endorsement only:

**1. "Hurricane"** means a storm system that has been declared a Hurricane by the National Weather Service and which causes sustained wind gusts of greater than or equal to 74 miles per hour in any part of the state in which the residence premises are located.  It includes the wind, wind gusts, hail, rain, lightning, snow or sleet, tornadoes or cyclones or any other weather conditions caused by or resulting from the storm system.

**2.  "Duration of a 'Hurricane'"** means the following time period:
   **a.** Beginning at the earlier of:

      (i)    the time a "Hurricane" watch or warning is issued by the "National Weather Service" for any part of the state in which the residence premises are located; or

      (ii)   the time that sustained wind gusts of greater than or equal to 74 miles per hour `are recorded anywhere in the state;

   and

   **b.** Ending 24 hours after the later of:

      (i)    the termination of the last "Hurricane" watch or warning for any part of the state by the "National Weather Service"; or

      (ii)   the time of the last recorded sustained wind gust of greater than or equal to 74 miles per hour anywhere in the state.

**3.** "National Weather Service" means the National Weather Service including any of its offices, centers or agencies (including but not limited to the National Hurricane Center)  or, if the National Weather Service ceases to exist or ceases to perform the function of issuing "Hurricane" warnings, any such other entity as may replace it.

**B. Hurricane Deductible**

We will pay only that part of the total of all covered losses payable under Section I - Property Coverages that exceeds the Hurricane Deductible as stated on the Declarations, as follows:

**1. When this Hurricane Deductible Applies:**  The Hurricane Deductible applies to the total of all covered losses occurring within the "Duration of a Hurricane" and caused directly or indirectly by a "Hurricane."  This Hurricane Deductible shall apply separately to each "Hurricane."



2. **How the Hurricane Deductible Amount is Determined:** The amount of the applicable Hurricane Deductible shall be determined by multiplying the Coverage A limit of liability as shown in the Declarations by the Hurricane Deductible Percentage amount shown on the Declarations.

   If no Hurricane Deductible Percentage is shown on the Declarations, the amount of the applicable Hurricane Deductible shall be the dollar amount shown on the Declarations.

3. **Other Deductibles.** If the Hurricane Deductible amount under this endorsement is less than the base policy deductible as shown on the Declarations, the base policy deductible shall apply.

This endorsement does not provide additional coverage. All other provisions of this policy apply.



THIS ENDORSEMENT DOES **NOT** CONSTITUTE A REDUCTION OF COVERAGE.

# <u>NO</u> SECTION II - LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS
# <u>LIMITED</u> SECTION I - PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS

HOMEOWNERS
HO 04 96 10 00

**A.** "Business", as defined in the policy, means:

  **1.** A trade, profession or occupation engaged in on a full-time, part-time, or occasional basis; or

  **2.** Any other activity engaged in for money or other compensation, except the following:

  **a.** One or more activities:

   **(1)** Not described in **b.** through **d.** below; and

   **(2)** For which no "insured" receives more than $2000 in total compensation for the 12 months before the beginning of the policy period;

  **b.** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

  **c.** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

  **d.** The rendering of home day care services to a relative of an "insured".

**B.** If an "insured" regularly provides home day care services to a person or persons other than "insureds" as their trade, profession or occupation, that service is a "business".

**C.** If home day care service is not a given "insured's" trade, profession or occupation but is an activity:

  **1.** That an "insured" engages in for money or other compensation; and

  **2.** From which an "insured" receives more than $2,000 in total/combined compensation from it and any other activity for the 12 months before the beginning of the policy period;

the home day care service and other activity will be considered a "business".

**D.** With respect to **C.** above, home day care service is only an example of an activity engaged in for money that may be a "business". Any single activity or combination of activities:

  **1.** Described in **A.2.** above, and

  **2.** Engaged in for money by a single "insured";

may be considered a "business" if the $2000 threshold is exceeded.

**E.** With respect to **A.** through **D.** above, coverage does not apply to or is limited with respect to home day care service which is a "business". For example, this policy:

  **1.** Does not provide:

  **a.** Section **II** coverages. This is because a "business" of an "insured" is excluded under **E.2.** of Section **II** - Exclusions;

  **b.** Coverage, under Section **I**, for other structures from which any "business" is conducted; and

  **2.** Limits Section **I** coverage, under Coverage **C** - Special Limits of Liability, for "business" property:

  **a.** On the "residence premises" for the home day care "business" to $2,500. This is because Category **h.** (**e.** in Form **HO 00 08**) imposes that limit on "business" property on the "residence premises";

  **b.** Away from the "residence premises" for the home day care "business" to $500. This is because Category **i.** (**f.** in Form **HO 00 08**) imposes that limit on "business" property away from the "residence premises". Category **i.** does not apply to property described in Categories **j.** and **k.** (**g.** and **h.** respectively in Form **HO 00 08**).

Copyright, Insurance Services Office, Inc., 1999



## ARSON REWARD

The following Additional Coverage is added to SECTION I - PROPERTY COVERAGES, Additional Coverages:

**Arson Reward.**  We will pay up to $5,000 for information which leads to an arson conviction in connection with a fire loss covered by this policy.  Regardless of the number of persons providing information, our limit shall not be increased.  This $5,000 limit is in addition to the limit of liability applicable to the damaged or destroyed property.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| | |
|---|---|
| **PREMISES ALARM OR FIRE PROTECTION SYSTEM** | **HOMEOWNERS**<br>**HO 04 16 10 00** |

We acknowledge the installation of an alarm system and/or automatic sprinkler system approved by us on the "residence premises". You agree to maintain this system or systems, for which we have granted a credit, in working order and to let us know promptly of any change, including removal, made to the system(s).



## WAIVER OF DEDUCTIBLE - THEFT FROM RESIDENCE PREMISES - TEXAS

With the installation of a complete burglar alarm, reporting to either a police station or a central station, we will waive the deductible that applies for direct physical loss to the property described under Coverages A, B, and C as a result of theft, including attempted theft, from that portion of the "residence premises" protected by the alarm system.

A complete burglar alarm covers at the minimum all exterior doors.  A dwelling which meets the minimum for a complete burglar alarm is considered protected in its entirety.

The waiver of deductible will not apply if:

a.   The alarm system has not been activated, or the service has been discontinued;

b.   The theft loss occurs off the "residence premises"; or

c.   The theft loss occurs from a portion of the "residence premises" not protected by the alarm system.

All other provisions of this policy apply.

FMHO 3160 10 08                              Liberty Mutual Group                              Page 1 of 1



# AMENDATORY ENDORSEMENT

**THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY**

*THIS ENDORSEMENT SUPERCEDES ALL OTHER ENDORSEMENTS WHICH HAVE BEEN MADE PART OF YOUR POLICY AND REFERENCE THESE SAME PROVISIONS*

### DEFINITIONS

The introductory paragraph of Definitions is amended to read:

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and

1. the spouse of the "named insured" shown on the Declarations, if a resident of the same household; or

2. the partner in a civil union, registered domestic partnership, or similar union or partnership, with the "named insured" shown on the Declarations, if a resident of the same household.

Section 2., above, only applies if the civil union, registered domestic partnership or other similar union or partnership is validly entered into under the law of any state, territory or possession of the United States of America, any territory or province of Canada, or the equivalent of a state or province in any other country.

"We," "us" and "our" refer to the Company providing this insurance.

In Section **B.**, the definition for 12. "Fungi" is deleted, and the definition for 13. "Business Day" is deleted.  The following definitions are added to Section **B.**:

**12.** "Mold, Fungus, Wet Rot, Dry Rot, or Bacteria" means any type or form of fungus, rot, or bacteria.  This includes mold, mildew and any mycotoxins, other microbes, spores, scents or byproducts produced or released by mold, mildew, fungus, rot, or bacteria.

**13.** "Remediation" means the reasonable and necessary treatment, containment, decontamination, removal or disposal of Mold, Fungus, Wet Rot, Dry Rot, or Bacteria caused by a covered water loss as required to complete the repair or replacement of property covered under Section I of the policy. "Remediation" includes payment for any loss of fair rental value or reasonable increase in additional living expenses that is necessary to maintain your normal standard of living if Mold, Fungus, Wet Rot, Dry Rot, or Bacteria resulting from a covered water loss makes your residence premises uninhabitable.  "Remediation" includes testing or investigation to detect, evaluate or measure Mold, Fungus, Wet Rot, Dry Rot, or Bacteria.

**14.** "Business day" means a day other than a Saturday, Sunday or holiday recognized by the state of Texas.

### SECTION I - PROPERTY COVERAGES

For form **HO 00 03**, Paragraph **A.1.a** in **Coverage A - Dwelling** is deleted and replaced by the following:

**a.** The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling, and attached wall-to-wall carpeting;

For forms **HO 00 03, HO 00 06, and HO 00 04:**

**Coverage C - Personal Property**

The introductory paragraph of section **3. Special Limits of Liability** is replaced with the following:

The special limit for each category below is the total limit for each loss for all property in that category.  If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply.  These special limits do not increase the Coverage C limit of liability.

Categories **b., c., d., e., f., i., j.,** and **k**. are deleted and replaced with the following:



**a.** $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets, and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

**b.** $1000 on watercraft of all types, including their trailers, furnishings, equipment, and outboard engines or motors.

**c.** $1000 on trailers or semitrailers not used with watercraft of all types.

**d.** $1000 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

**e.** $2000 for loss by theft of firearms and related equipment.

**i.** $250 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and other property described in Categories **j.** and **k.** below.

**j.** $1000 on electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs, or other media that can be used with any apparatus described in this Category **j.**

**k.** $1000 on electronic apparatus and accessories used primarily for "business" while away from the "residence premises" and not in or upon a "motor vehicle". The apparatus must be equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category **k.**

The following limits are added after item **3.k.**:

**l.** $5000 on Electronic Data Processing equipment and recording or storage media or accessories used with that equipment. There is no coverage for said equipment, media, or accessories while located away from the **residence premises** except when said equipment or media are removed from the **residence premises** for the purpose of repair, servicing or temporary use. An **insured** student's equipment and media are covered while at a residence away from home.

**m.** $5000 on any one article and $10000 in the aggregate for loss by theft of any rug, carpet (excluding attached wall-to-wall carpet), tapestry, wall-hanging or other similar article.

**n.** $2500 in the aggregate for loss of any of the following whether or not they are part of a collection: trading cards, comic books, figurines, stamps, advertising materials, stuffed animals, dolls, sports and entertainment memorabilia, toys, games, militaria, and books.

**o.** $1200 for any one electrical appliance for loss by sudden and accidental damage from artificially generated electrical currents. This special limit does not apply to electronic data processing equipment or storage media.

For form **HO 00 03**:

If endorsement FMHO 3326 is included in the policy coverage for categories **b., c., d., e., f., i., j., k., l., m.,** and **n.**, are deleted. Coverage for category **o.** still applies.

For forms **HO 00 03, HO 00 06,** and **HO 00 04**:

**Coverage E. Additional Coverages**

Item **7. Loss Assessment** is deleted in its entirety.

For form **HO 00 03**:

Item **10. Landlord's Furnishings** is deleted in its entirety.

For forms **HO 00 03** and **HO 00 04**:

**Item 11. Ordinance Or Law**

The final sentence in this section, which reads "This coverage is additional insurance," is deleted.



For form **HO 00 06:**

Item **10. Ordinance Or Law**

    The final sentence in this section, which reads "This coverage is additional insurance," is deleted.

For forms **HO 00 03, HO 00 06,** and **HO 00 04:**

Item **13. Mold, Fungus, Wet Rot, Dry Rot, or Bacteria** is added:

    We provide up to $5,000 of coverage for **remediation** of "Mold, Fungus, Wet Rot, Dry Rot, or Bacteria" as required to complete the repair or replacement of property under Section I of the policy, that is damaged by a covered water loss.  This is not additional insurance and does not increase the limit of liability for Coverage A (Dwelling), Coverage B (Other Structures), Coverage C (Personal Property), or Coverage D (Loss of Use).

**SECTION I - PERILS INSURED AGAINST**

For forms **HO 00 03:**

**Coverage A - Dwelling And Coverage B - Other Structures**

    Exception to c.(6) is deleted and replaced by the following:

    **Unless otherwise excluded we cover damage to A - Dwelling and B - Other Structures from a Sudden and Accidental Discharge or overflow of Water or Steam** from within a plumbing or drain system, heating system, air conditioning system, or household appliance.

This coverage does not include loss:

    a.  directly or indirectly caused by or resulting from seepage, meaning continuous or repeated seepage or leakage of water or steam over a period of more than fourteen days:

        1.  From a plumbing, heating, air conditioning or automatic fire protection system or from within a domestic appliance; or

        2.  From within or around any plumbing fixtures, including, but not limited to, shower stalls, shower pans, shower baths, tub installations, sinks or other fixtures, including ceilings, walls, or floors.

    b.  to the system or appliance from which the water or steam escaped. We will cover the cost of tearing out and replacing any part of the building necessary to repair or replace the heating system, air conditioning system, plumbing supply or drain system, or household appliance. However, such tear out and replacement coverage only applies if the water or steam causes actual damage to a building on the "residence premises."

    c.  caused by or resulting from water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area.

In the event of a covered loss resulting from sudden and accidental discharge of water from a plumbing or drain system located within or under the slab or foundation of the dwelling, we will pay no more than a total amount of 5% of the Coverage A (Dwelling) limit of liability or $3,500, whichever is greater, for:

1.  the cost you incur to tear out and replace any part of the building necessary to access, repair, or replace that part of such plumbing or drain system; or

2.  the cost you incur to reroute the plumbing or drain system.

This coverage does not include loss to the plumbing or drain system from which the water or steam escaped. Such tear out and replacement coverage only applies if the water or steam causes actual damage to a building on the "residence premises".

The following item is added to A.2.c.(6):

    **(i)** Growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;

**SECTION I - EXCLUSIONS**

For forms **HO 00 03, HO 00 06,** and **HO 00 04:**



**10. "Fungi" Or Microbes** is replaced with the following:

**10. "Fungi" Or Microbes**

    **a.** **"Mold, Fungus, Wet Rot, Dry Rot, or Bacteria" means any type or form of fungus, rot, or bacteria.  This includes mold, mildew and any mycotoxins, other microbes, spores, scents or byproducts produced or released by mold, mildew, fungus, rot, or bacteria. This exclusion also applies to the cost:**

        **(1)** To remove Mold, Fungus, Wet Rot, Dry Rot, or Bacteria from property covered under Section **I** - Property Coverages;

        **(2)** To tear out and replace any part of the building or other covered property as needed to gain access to the Mold, Fungus, Wet Rot, Dry Rot, or Bacteria; and

        **(3)** Of testing of air or property to confirm the absence, presence or level of Mold, Fungus, Wet Rot, Dry Rot, or Bacteria;

    **b.** Exclusion **10.a.** applies unless the Mold, Fungus, Wet Rot, Dry Rot, or Bacteria are located upon the portion of covered property that must be repaired or replaced because of direct physical damage resulting from sudden and accidental discharge or overflow of water that would otherwise be covered under this policy.

    **c.** However, the exception to the exclusion described in **10.b.** does not include:

        **(1)** The cost to treat, contain, remove or dispose of the Mold, Fungus, Wet Rot, Dry Rot, or Bacteria beyond that which is required to repair or replace the covered property physically damaged by water;

        **(2)** The cost of any testing of air or property to confirm the absence, presence or level of Mold, Fungus, Wet Rot, Dry Rot, or Bacteria whether performed prior to, during or after removal, repair, restoration or replacement;

        **(3)** The cost of any decontamination of the "residence premises"; and

        **(4)** Any increase in loss under Coverage **D** - Loss of Use and Additional Coverage **1.** Debris Removal resulting from **c.(1), (2)** and **(3).**

Direct loss by fire, smoke, or explosion resulting from Mold, Fungus, Wet Rot, Dry Rot, or Bacteria is covered.

**SECTION I - CONDITIONS**

For forms **HO 00 03, HO 00 06,** and **HO 00 04:**

**A.** **Insurable Interest And Limit of Liability** is replaced with the following:

**A.** **Insurable Interest and Limit of Liability.**  Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

    1.  to the **insured** for more than the amount of the **insured's** interest at the time of loss; or

    2.  for more than the applicable limit of liability.

Each time there is a loss to any building insured under Coverage A (Dwelling), the amount of insurance applicable to that building for loss by fire will be reduced by the amount of the loss.  As repairs are made, the amount of insurance will be reinstated up to the limit of liability shown on the declarations page.

**B.** **Duties After Loss** is deleted and replaced by the following:

**B.** **Duties After Loss**

    **1.** **Your Duties After Loss**

        In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, or an "insured" seeking coverage, or a representative of either:

        **a.** Give prompt notice to us or our agent;

        **b.** Notify the police in case of a loss by theft and provide them with a full, complete and accurate inventory of the property damaged, stolen or removed.

        **c.** Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money Coverage under Section **I** - Property Coverages;

        **d.** Protect the property from further damage. If repairs to the property are required, you must:



  **(1)** Make reasonable repairs and necessary repairs to protect the property; and

  **(2)** Keep an accurate record of repair expenses;

 **e.** Cooperate with us in the investigation of a claim;

 **f.** Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

 **g.** As often as we reasonably require:

  **(1)** Show the damaged property;

  **(2)** Authorize us to obtain records and documents we request and permit us to make copies; and

  **(3)** Submit to examination under oath, while not in the presence of any other "insured," and sign and swear to the same;

 **h.** Send to us, within 91 days after our request, your signed, sworn proof of loss on a standard form supplied by us. We must request a signed, sworn proof of loss within 15 days after we receive your written notice, or we waive our right to require a proof of loss. Such waiver will not waive our other rights under this policy.

  **(1)** This proof of loss shall set forth, to the best of your knowledge and belief:

   **(a)** The time and cause of loss;

   **(b)** The interests of all "insureds" and all others in the property involved and all liens on the property;

   **(c)** Other insurance which may cover the loss;

   **(d)** Changes in the title or occupancy of the property during the term of the policy;

   **(e)** Specifications of the damaged buildings and detailed repair estimates;

   **(f)** The inventory of damaged personal property described in **B.1.e.** above;

   **(g)** Receipts for additional living expenses incurred and records that support the fair rental value loss; and

   **(h)** Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I - Property Coverages, stating the amount and cause of loss.

For form **HO 00 03** the following section is added to **B) Duties After Loss**

  **(2)** If you elect to make claim under the Replacement Cost Coverage of this policy, this proof of loss shall also state, to the best of your knowledge and belief:

   **(a)** The replacement cost of the described dwelling;

   **(b)** The replacement cost of any other building on which loss is claimed; or

   **(c)** The full cost of repair or replacement of loss without deduction for depreciation.

 **2. Our Duties After Loss**

  **a.** No later than 15 days after we receive your written notice of claim, we must:

   **(1)** Acknowledge receipt of the claim;

   If our acknowledgment of the claim is not in writing, we will keep a record of the date, means and content of our acknowledgment;

   **(2)** Begin any investigation of the claim;

   **(3)** Specify the information you must provide in accordance with Paragraph **B.1.** Your Duties After Loss above;

   We may request more information, if during the investigation of the claim such additional information is necessary.

  **b.** After we receive the information we request, we must notify you in writing whether the claim will be paid or has been denied or whether more information is needed:

   **(1)** Within 15 "business days"; or

   **(2)** Within 30 days if we have reason to believe the loss resulted from arson;

  **c.** If we do not approve payment of your claim or require more time for processing your claim, we must:

   **(1)** Give the reason for denying your claim;

   **(2)** Give the reasons we require more time to process your claim. But we must either approve or deny your claim within 45 days after requesting more time.



For forms **HO 00 03, HO 00 06, and HO 00 04:**

**C. Loss Settlement** is deleted and replaced by the following:

**C. Loss Settlement.**  Covered property losses are settled as follows:

1.  Our limit of liability and payment for covered losses to personal property will not exceed the smallest of the following:

    a.  the limit of liability under this policy that applies to the damaged or destroyed property;

    b.  for property that is repairable, the cost to repair or replace the damaged property with material of like kind and quality, with no deduction for depreciation; or

    c.  the interest of the **insured**; or

    d.  the replacement cost at the time of loss.

    We do not pay replacement cost for:

    (1)  property which cannot be replaced.

    (2)  property not maintained in good or workable condition.

    (3)  property that is either obsolete or useless to the **insured** at the time of loss.

    (4)  property that is not repaired or replaced.

    For property covered under Coverage C:

    (a)  We will pay you:

    (i)   the replacement cost of your damaged property up to $1,500; and

    (ii)  the actual cash value of your remaining damaged property

    within 5 business days after we notify you that we will pay the claim.

    If you repair or replace the damaged property, you may make claim for reimbursement on a replacement cost basis for the replacement cost of your property exceeding $1,500.  You must repair, restore or replace the property within 365 days after the loss. Reimbursement will be made within 5 business days after we receive proof that the property has been repaired, restored, or replaced.

    (b)  In lieu of (a) above, we may offer and you may accept or reject our offer to provide a replacement item of like kind and quality for your damaged property.

For form **HO 00 03** only, Paragraph C.2 in **Loss Settlement** is deleted and replaced by the following:

2.  Our limit of liability and payment for covered losses to dwelling (including wall to wall carpeting) and other structure(s) under Coverage A (Dwelling) and Coverage B (Other Structures), except cloth awning and fences, will be at replacement cost settlement subject to the following:

    a.  If, at the time of loss, the amount of insurance in this policy on the damaged building structure(s) is 80% or more of the full replacement cost of the building structure(s) immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

    (1)  the limit of liability under this policy that applies to the damaged or destroyed building structure(s);

    (2)  the cost to repair or replace that part of the building structure(s) damaged, with material of like kind and quality and for the same use and occupancy on the same premises; or

    (3)  the necessary amount actually spent to repair or replace the damaged building structure(s).

    b.  If, at the time of loss, the amount of insurance in this policy on the damaged building structure(s) is less than 80% of the full replacement cost of the building structure(s) immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building structure(s):

    (1)  the actual cash value of that part of the building structure(s) damaged; or

    (2)  that proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building structure(s) damaged, which the total amount of insurance in this policy on the damaged building structure(s) bears to 80% of the replacement cost of the building structure(s).



   c. To determine the amount of insurance required to equal 80% of the full replacement cost of the building structure(s) immediately before the loss, do not include the value of:

      (1) excavations, foundations, piers or any supports which are below the undersurface of the lowest basement floor;

      (2) those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

      (3) underground flues, pipes, wiring and drains.

   d. The applicable limit of liability for roof surfacing, roof vents and roof flashing materials for Buildings under Coverage A or B is the actual cash value at the time of loss but not more than the amount required to repair or replace if the loss to the roof surfacing materials is caused by the peril of Windstorm or Hail and the policy is endorsed with the Actual Cash Value Loss Settlement Windstorm or Hail Losses to Roof Surfacing endorsement.

We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of 2.a. and 2.b. above.

However, if the cost to repair or replace the damage is both:

      (a) less than 5% of the amount of insurance in this policy on the building structure(s); and

      (b) less than $2,500

We will settle the loss according to the provisions of 2.a. and 2.b. above whether or not actual repair or replacement is complete.

You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to building structure(s) on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability according to the provisions of this Condition **C. Loss Settlement**.

  3. Our limit of liability and payment for covered losses to cloth awning and fences, will be at actual cash value at the time of loss but not more than the amount required to repair or replace.

**D. Loss To A Pair Or Set** is deleted and replaced by the following:

**D. Loss To A Pair Or Set**

  1. In case of loss to a pair or set other than jewelry we may elect to:

    **a.** Repair or replace any part to restore the pair or set to its value before the loss; or

    **b.** Pay the difference between actual cash value of the property before and after the loss.

  2. Loss to a jewelry pair or set will be settled at replacement cost at the time of loss without deduction for depreciation.

**G. Suit Against Us** is deleted and replaced by the following:

**G. Suit Against Us**

No suit or action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this policy. Action brought against us must be started within two years and one day after the cause of action accrues.

**I. Loss Payment** is deleted and replaced by the following:

**I. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to payment.

If we notify you that we will pay your claim, or part of your claim, we must pay within 5 "business days" after we notify you. If payment of your claim or part of your claim requires the performance of an act by you, we must pay within 5 "business days" after the date you perform the act.

**J. Abandonment of Property** is replaced with the following:

**J. Abandonment or Property.** There can be no abandonment of property to us.

For forms **HO 00 03** and **HO 00 06**:

**K. Mortgage Clause** is deleted and replaced by the following:



**K. Mortgage Clause (Without Contribution)**

1. We will pay for any covered loss of or damage to buildings or structures to the mortgagee shown on the declarations page as interests appear;

2. The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building structure;

3. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgagee has the right to receive loss payment if the mortgagee:

   a. At our request, pays any premium due under this policy, if you have failed to do so;

   b. Submits a signed, sworn statement of loss within 91 days after receiving notice from us of your failure to do so;

   c. Has notified us within 60 days of any changes in ownership, occupancy or substantial changes in risk known to the mortgagee;

   All of the terms of this policy will then apply directly to the mortgagee.

   Failure of the mortgagee to comply with **3.a., 3.b.,** or **3.c.** above shall void this policy as to the interest of the mortgagee.

4. If we pay the mortgagee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   a. The mortgagee's rights under the mortgage will be transferred to us to the extent of the amount we pay.

   b. The mortgagee's right to recover the full amount of the mortgagee's claim will not be impaired.

   At our option, we may pay the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

5. If this policy is cancelled, we will give the mortgagee specifically named on the declarations page written notice of cancellation.

   If we cancel the policy, we will give the mortgagee the same number of days notice of cancellation we give to you.

   If you cancel the policy, we will give the mortgagee notice of cancellation to be effective on the date stated in the notice. The date of cancellation cannot be before the 10th day after the date we mail the notice.

   We will not give notice of cancellation to any successor or assignee of the mortgagee named in the policy.

6. If the property described under Coverage **A** - Dwelling or Coverage **B** - Other Structures is foreclosed upon under the deed of trust, the mortgagee may cancel this policy of insurance and will be entitled to any unearned premium from this policy.

   The mortgagee must credit any unearned premium against any deficiency owed by the borrower and return any unearned premium not so credited to the borrower. The unearned premium will be figured using the customary pro rata procedures.

For forms **HO 00 03, HO 00 06,** and **HO 00 04:**

The following items are added:

   **S. Salvage Rights.** If we notify you that we will pay your claim or part of your claim, the notice must also state whether we will or will not take all or any part of the damaged property.  We must bear the expense of our salvage rights.



**T.   Residential Community Property Clause**

This policy, subject to all other terms and conditions, when covering residential community property, as defined by state law, shall remain in full force and effect as to the interest of each spouse covered, irrespective of divorce or change of ownership between the spouses unless excluded by endorsement attached to this policy until the expiration of the policy or until cancelled in accordance with the terms and conditions of this policy.

**U.   Catastrophe Claims**

If a claim results from a weather related catastrophe or a major natural disaster, each claim handling deadline shown in **B. Duties After Loss** and **I. Loss Payment** is extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather related event which:

a.   Is declared a disaster under the Texas Disaster Act of 1975; or

b.   Is determined to be a catastrophe by the Texas Department of Insurance.

**V.   Notice of Settlement**

We shall notify the named insured in writing of initial offer to compromise or settle a claim against the insured made under a casualty policy issued to the named insured - notice must be given not later than the 10th day after the date on which the offer is made.  In addition, we shall notify the named insured in writing of any settlement of a claim against the insured made under a casualty policy issued to the named insured - notice must be given not later than the 30th day after the date of the settlement.  EXCEPTION - This article does not apply to a casualty policy that requires the insured's consent to settlement of a claim against an insured or to fidelity, surety or guaranty bonds or to marine insurance as defined by Section 1807.001.

## SECTION II - EXCLUSIONS

**E. Coverage E - Personal Liability And Coverage F - Medical Payments To Others**

Paragraph **E.7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse** is deleted and replaced by the following:

**7.   Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

For the purpose of this endorsement, abuse means an act which is committed with the intent to cause harm.

"Bodily injury" or "property damage" arising out of the actual or attempted:

**a.**   abuse, molestation, exploitation, assault or other mistreatment of any person; or

**b.**   rape, sexual assault, or other sexual abuse of any person; or

The following exclusions are added to Item **E. Coverage E - Personal Liability And Coverage F - Medical Payments to Others**

**9.**   "Bodily Injury" or "property damage" consisting of, resulting from, arising out of, aggravated by or in any way caused by, in whole or in part, by "Mold, Fungus, Wet Rot, Dry Rot, or Bacteria".

**10.** Liability imposed upon any "insured" by any governmental authority for "bodily injury" or "property damage" consisting of, resulting from, arising out of, aggravated by or in any way caused by, in whole or in part, by "Mold, Fungus, Wet Rot, Dry Rot, or Bacteria".

## SECTION II - ADDITIONAL COVERAGES

For form **HO 00 03:**

Item **D. Loss Assessment** is deleted in its entirety.

## SECTION I AND II - CONDITIONS

For forms **HO 00 03, HO 00 06,** and **HO 00 04:**

**C. Cancellation** is deleted and replaced by the following:

**C. Cancellation**

**1.**   You may cancel this policy at any time by notifying us of the date cancellation is to take effect. We will refund the appropriate portion of any unearned premium not later than the 15th business day after the effective date of cancellation or termination of this policy.

**2.**   We may cancel this policy at any time for the reasons stated in this condition by mailing you notice in writing of the date cancellation takes effect.

**a.**   If this policy has been in effect for less than 60 days or more and is not a renewal policy, we may not cancel this policy unless:



**(1)** We identify a condition that:

    **(a)** Creates an increased risk of hazard;

    **(b)** Was not disclosed in the application for insurance coverage; and

    **(c)** Is not the subject of a prior claim;

**(2)** Before the effective date of the policy we do not accept a copy of a required inspection report that:

    **(a)** Was completed by an inspector licensed by the Texas Real Estate Commission or who is otherwise authorized to perform inspections; and

    **(b)** Is dated not earlier than the 90th day before the effective date of the policy.

    An inspection report is deemed accepted unless we reject it before the 11th day after the date we receive it;

**(3)** You do not pay the premium or any portion of the premium due;

**(4)** The Texas Department of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state;

**(5)** You submit a fraudulent claim; or

**(6)** There is an increase in the hazard covered by this policy that is within your control and that would produce an increase in the premium rate of this policy.

The effective date of cancellation cannot be before:

    **(1)** The 10th day after we mail notice if we cancel for reasons **(3), (4), (5), or (6)** above.

    **(2)** The 30th day after we mail notice if we cancel for any other reason.

**b.** If this policy has been in effect 60 days or more, or at any time if it is a renewal policy, we may not cancel this policy unless:

    **(1)** You do not pay the premium or any portion of the premium due.

    **(2)** The Texas Department of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state.

    **(3)** You submit a fraudulent claim.

    **(4)** There is an increase in the hazard covered by this policy that is within your control and that would produce an increase in the premium rate of this policy.

**3.** We may not cancel this policy solely because you are an elected official.

**D. Nonrenewal** is deleted and replaced by the following:

**D. Refusal To Renew**

1. We may not refuse to renew this policy because of claims for losses resulting from natural causes.

2. We may not refuse to renew this policy solely because you are an elected official.

3. We may refuse to renew this policy if you have filed three or more claims under the policy in any three year period that do not result from natural causes.

   If you have filed two claims in a period of less than three years, we may notify you in writing, that if you file a third claim during the three-year period, we may refuse to renew this policy by providing you proper notice of our refusal to renew as provided in 4. below. If we do not notify you after the second claim, we may not refuse to renew this policy because of losses.

   A claim does not include a claim that is filed but is not paid or payable under the policy.



4. If we refuse to renew this policy, we must deliver to you, or mail to you at your mailing address shown on the declarations page and any mortgagee named on the declarations page, written notice of our refusal to renew not later than the 30th day before the date on which this policy expires. Proof of mailing will be sufficient proof of notice. If we fail to give you proper notice of our decision not to renew, you may require us to renew the policy.

The introductory paragraph of **G. Death** is amended to read:

If any person named in the Declarations or the spouse, if a resident of the same household; or the partner in a civil union, registered domestic partnership or similar union or partnership, if a resident of the same household, dies:

The following Condition is added:

**H. Concealment or Fraud.** This policy is void as to you and any other **insured**, if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance, made false statements or committed fraud relating to this insurance, whether before or after a loss.

**SMALL BOAT AND MOTOR FORM**

If endorsement FMHO 696 is included in the policy the following applies

**6. Peril Insured Against:** (h) is deleted and replaced by the following

(h) Loss or damage intentionally caused by an insured. However, this exclusion does not apply to an insured who did not cooperate in or contribute to the creation of the loss if that insured has:

1. Filed a police report; and

2. Cooperated with law enforcement investigating or prosecution relating to any other insured causing the intentional loss.

For form **HO 00 03:**

**INFLATION PROTECTION ENDORSEMENT**

If endorsement FMHO 2835 is included in the policy the following applies

**Coverage B, Structure;** is deleted and replaced by the following

Coverage B - Other Structures;

---

All other policy terms and conditions apply.



# INFLATION PROTECTION ENDORSEMENT

It is agreed that the limits of liability for:

        Coverage A, Dwelling;

        Coverage B, Structure;

        Coverage C, Personal Property;

        and Coverage D, Loss of Use,

shall be raised by the rate of increase in the latest available information on residential building cost inflation.

## METHOD

To find the limits of liability on a given date, the Index Level the Company assigns to that date will be divided by the Index Level for the effective date of this Endorsement. This Factor is then multiplied by the limit for Coverages A, B, C and D separately.

If during this policy's term the Coverage A limit is changed at the insured's request, the effective date of this Endorsement is amended to the effective date of such change.

This Endorsement shall not reduce the limits of liability to less than the amount shown on:

        a.   The policy; or

        b.   The most recent Homeowners Policy Renewal Declaration.

This Endorsement must be attached to Change Endorsement when issued after the policy is written.